626 A.2d 129

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael CONFORTI, Appellant.**

Supreme Court of Pennsylvania.

Argued April 5, 1993.

Decided May 27, 1993.

Robert N. Bryan, Honesdale, for M. Conforti.

Mark Zimmer, Honesdale, for Com.

Robert A. Graci, Harrisburg, for Com./A.G.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On September 20, 1991, appellant, Michael Conforti was convicted by a jury of murder of the first degree, kidnapping, rape, criminal conspiracy to commit murder, criminal conspiracy to commit rape and criminal conspiracy to commit kidnapping. Immediately following the verdict, a sentencing hearing was held pursuant to the Sentencing Code, 42 Pa.C.S.A. § 9711, and the jury unanimously sentenced appellant to death for the murder of the first degree conviction; whereupon the trial judge formally imposed the death sentence. On August 24, 1992, post-trial motions were heard and denied by the trial judge, and on September 18, 1992, appellant was also sentenced to an aggregate, consecutive term of imprisonment of twenty-five (25) to fifty (50) years on the remaining five felony charges. This direct appeal followed.

Appellant does not challenge the propriety of anything relating to his conviction for murder of the first degree; however, this court is required to review the sufficiency of the evidence in all capital cases. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Additionally, our statutory obligation requires that we determine the following: 1) whether the sentence of death was the product of passion, prejudice or any other arbitrary factor; 2) whether the evidence fails to support the finding of at least one specified aggravating circumstance; and 3) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases considering both the circumstances of the crime and the character and record of the defendant. 42 Pa.C.S.A. § 9711(h); *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687 (1991).

In reviewing the sufficiency of the evidence, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as the verdict winner, and must determine whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Judge*, 530 Pa. 403, 609 A.2d 785 (1992). Accordingly, we find the following evidence sufficient beyond a reasonable doubt to support the jury's verdict of murder of the first degree.

On December 20, 1990, Kathleen Harbison, the victim, was with her friend Sue Fritz at Cousins Restaurant and Bar in Wayne County. While there she was seen in the company of appellant and James Bellman, both of whom she had met for the first time. During the early morning hours of December 21, 1990, Ms. Harbison left the bar to warm up her car while Ms. Fritz said goodbye to some friends. A few minutes later Ms. Fritz found Ms. Harbison's car in the parking lot with the engine running, the driver door locked, the passenger door unlocked, the heater running, the radio on high volume and Ms. Harbison's purse on the seat. Ms. Harbison was

nowhere to be found. Bellman was seen in his car, parked next to Ms. Harbison's car, before Ms. Fritz came outside.

A neighbor of appellant's in Pike County testified that at around 2:30 a.m. on December 21, 1990, she heard a car come down the road and then heard appellant's voice, Bellman's voice and also heard a female voice "holler" something. (N.T. 9/16/91, p. 193–194). A friend of appellant's testified that she went to see appellant at his trailer home at 3:30 a.m. on December 21, 1990 but got no response when she banged on both the door and the window. She stated that appellant's car was at the trailer but Bellman's car was not there. (N.T. 9/18/91, p. 182). The following day, this friend was visited by appellant and Bellman. They tried to convince her that she was mistaken and must have seen Bellman's car there. She would not change her story and they left.

Kathleen Harbison's body was found on December 22, 1990 in a secluded wooded area in Wayne County. The cause of death was multiple stab wounds. She had been stabbed twelve times. Four of the wounds were lethal. There was evidence that Ms. Harbison had been bound at both at the wrists and ankles by handcuffs and that the acts were committed by more than one individual.

Analysis of swabbings from the victim's body revealed the presence of sperm from the same blood type as that of Bellman's. A foreign pubic hair found within Ms. Harbison's combings was similar to appellant's. Soil samples taken from Ms. Harbison's shoe were similar to soil samples taken from behind appellant's trailer and not similar to soil samples taken from the scene where her dead body was found. Divers recovered a knife and handcuffs from under the Ledgedale Bridge, eight-tenths of a mile from appellant's trailer. Another set of handcuffs and Ms. Harbison's eyeglasses were found across the road from appellant's residence. A ring found in appellant's burn barrel outside of his trailer was identified as belonging to Ms. Harbison.

Bellman testified as follows: On December 21, 1990 at approximately 2:00 a.m., he and Ms. Harbison left the bar in

Wayne County and went to appellant's trailer home in Pike County. Appellant forced Ms. Harbison to engage in oral sex after directing Bellman to handcuff Ms. Harbison. Appellant then indicated to Bellman that he wanted to kill Ms. Harbison. The victim was then placed in Bellman's car and driven to an isolated dirt road in Wayne County where she was pulled from the car by appellant and Bellman. Appellant then repeatedly stabbed Ms. Harbison with a knife he had obtained from his trailer before they had left.

Bellman further testified as follows: that after the killing, he and appellant stopped at the Ledgedale Bridge where appellant threw the knife and handcuffs into the water. They then burned all of their blood-stained clothing and the car mats from Bellman's car in appellant's burn barrel and cleaned and vacuumed appellant's trailer and Bellman's car. Bellman identified the knife recovered from under the bridge as being the murder weapon.

Based upon the foregoing evidence, a jury convicted appellant on September 20, 1991 of murder of the first degree. Our review of the record compels us to conclude that the evidence was sufficient beyond a reasonable doubt to support the first degree murder conviction.

At the penalty hearing, the jury sentenced appellant to death, based upon its finding that the one aggravating circumstance, that the defendant committed the killing while in the perpetration of a felony (42 Pa.C.S.A. § 9711(d)(6)) outweighed the two mitigating circumstances, that the defendant has no significant history of prior criminal convictions (42 Pa.C.S.A. § 9711(e)(1)) and the defendant's physical disability and mental state at the time of the crime (42 Pa.C.S.A. § 9711(e)(8)). In accordance with our statutorily mandated review, we find that the evidence overwhelmingly supports the finding of at least one aggravating circumstance, since the killing occurred during the commission of five felonies, i.e. kidnapping, rape, and conspiracy to commit the crimes of murder, kidnapping, and rape.

■ The record also supports our conclusion that the sentence of death is a product of the evidence and not a product of "passion, prejudice or any other factor." 42 Pa.C.S.A. § 9711(h)(3). Additionally, based upon information accumulated by the Pennsylvania Death Penalty Study and supplied by the Administrative Office of Pennsylvania Courts, we conclude that the circumstances of the crime and the record of the appellant justify the sentence of death and that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases. *See, Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984) (and Appendix attached thereto).

Appellant does, however, challenge his conviction for rape and conspiracy to commit rape on the ground that the trial court did not have jurisdiction over those crimes. Appellant contends that Wayne County lacked jurisdiction over the charges of rape and conspiracy to commit rape because the crimes did not occur there and because no statutory or common law applied to vest jurisdiction there. The trial court held that the "Journey Act," 19 P.S. § 525 (1964), conferred jurisdiction upon Wayne County; however appellant challenges the applicability of the "Journey Act" to the facts of his case.

The "Journey Act" provides in pertinent part as follows:

In order to obviate the difficulty of proof as to offenses committed during journeys from place to place, in any indictment for felony or misdemeanor committed on any person or on any property upon any stage coach, stage, wagon, railway car or other such carriage whatever employed in any journey, it shall be sufficient to allege that such felony or misdemeanor was committed within any county or place through any part whereof such coach, wagon, cart, car or other carriage shall have passed in the course of the journey during which such felony or misdemeanor shall have been committed; ... and every such felony or misdemeanor ... shall and may inquired of, tried, determined and punished in the county or place within

which the same shall be so alleged to have been committed, in the same manner as if it had actually been committed therein.

19 P.S. § 525 (1964).[1]

The locus of a crime is always in issue since a court has no jurisdiction over an offense unless it occurred within the county of the trial, or unless, by some statute, it need not occur within the county of the trial. *Commonwealth v. Mull*, 316 Pa. 424, 175 A. 418 (1934). We believe that the applicable statute here is 19 P.S. § 525, commonly referred to as the "Journey Act." The obvious intent of the "Journey Act" is to "obviate the difficulties of proof as to offenses committed during journeys from place to place...." 19 P.S. § 525. In the present case, there was evidence that several crimes were committed during a journey by automobile from Wayne County to Pike County and back to Wayne County. The victim's dead body was found in Wayne County and since the victim is not alive to testify to where the several crimes occurred there are obvious difficulties of proof. Although, there was some evidence that the crime of rape occurred in Pike County, the difficulty of proof as to exactly where the crimes occurred still exists. We believe that the "Journey Act" was *intended to* encompass *all* cases involving crimes committed while on a journey, whether the crime or crimes occurred in a moving vehicle or during a temporary stop in a longer journey. Therefore, with respect to the crime of rape, the fact that the crime was not committed in a moving vehicle is not fatal since we find that it was committed during a temporary stop in a longer journey. With respect to the crime of conspiracy to commit rape the difficulties of proof are obvious in that there is no evidence to prove exactly where the conspiracy was formed. This is precisely the type of proof problem that the "Journey Act" was meant to obviate. Venue in Wayne County over *all* of the crimes that were part of this single criminal

1. Although this act may appear to have been permanently repealed, it is retained by virtue of 42 Pa.C.S.A. § 20003(b). *Commonwealth v. Kelly*, 319 Pa.Super. 204, 465 A.2d 1301 (1983).

episode attached once it was learned that the body of the victim was found in Wayne County and that several crimes occurred during a journey through more than one jurisdiction. Once venue had attached it could not be vitiated by a subsequent finding that one or some of the crimes occurred in a different county. *Commonwealth v. Hainds,* 448 Pa. 67, 292 A.2d 337 (1972).

The following provides a sufficient basis for giving the Wayne County trial court jurisdiction over all of the crimes pursuant to the "Journey Act." The evidence in this case revealed that appellant and Bellman were at Cousins Restaurant and Bar in Wayne County. While there they met Ms. Harbison. Appellant left the bar and went to his trailer home in Pike County where he met Bellman and Ms. Harbison. Appellant and Bellman carried out their previously arranged plan to rape Ms. Harbison and then drove her back to Wayne County where they killed her. Her dead body was found in Wayne County. We have no difficulty concluding that this is a crime to which the "Journey Act" is intended to apply. The fact that appellant was not in the same car as the victim is not fatal since appellant was involved in a conspiracy to kidnap, rape and murder the victim. The journey, to which the "Journey Act" applies, in this case, began in Wayne County where a conspiracy was formed between appellant and Bellman to kidnap, rape, and murder Ms. Harbison. Appellant was as much a part of the journey as Bellman and Ms. Harbison. Therefore, it was proper to give jurisdiction for all of the crimes arising out of this one criminal episode to the Wayne County trial court. Accordingly, we sustain the convictions for rape and criminal conspiracy to commit rape.[2]

For the foregoing reasons, we sustain appellant's convictions for murder of the first degree, rape and conspiracy to commit rape, and affirm the sentence of death for the murder

---

2. Due to our disposition of this issue, we do not address appellant's contention that the vacating of the rape and conspiracy to commit rape convictions requires a new death sentence hearing.

conviction.[3]

ZAPPALA, J., concurs in the result.

---

3.  The Prothonotary of the Supreme Court of Pennsylvania is directed to transmit the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court to the Governor. 42 Pa.C.S.A. § 9711(i).