692 A.2d 139

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Roosevelt E. McPHAIL, Appellant.**

Supreme Court of Pennsylvania.

Argued March 4, 1996.

Decided April 1, 1997.

520

Ira C. Houck, John J. Dean, Pittsburgh, for Roosevelt E. McPhail.

David M. McGlaughlin, Philadelphia, for Amicus Curiae–PA Association of Criminal Defense Lawyers.

Robert E. Colville, Claire C. Capristo, Kemal A. Mericli, Kevin R. McCarthy, Pittsburgh, for Commonwealth.

Michael E. Flaherty, Pittsburgh, for Ringgold School District & Ringgold Board of School Directors.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Chief Justice.

This case involves the question whether four drug transactions constituting a single criminal episode, committed in two counties, were within the jurisdiction of a single court; if they were, then 18 Pa.C.S. § 110 mandates that the charges be tried in a single proceeding.

Appellant, Roosevelt E. McPhail, on two occasions in June, 1990, sold small amounts of cocaine to an undercover agent of the Pennsylvania state police in Washington County. On the second occasion, the trooper asked to buy a larger quantity, and appellant told him they would have to go to Allegheny County to obtain such a quantity. The following day, appellant and the trooper drove to Allegheny County, appellant went into an apartment, returned with the requested amount of cocaine, and sold the drug to the officer. Appellant made a final sale of a smaller amount of cocaine to the trooper in Washington County several weeks later.

Charges were filed in the two counties for the offenses which took place therein. Appellant pled guilty to the offenses in Washington County, then moved to dismiss the Allegheny County charges on the basis of 18 Pa.C.S. § 110. The trial court granted the motion; the Commonwealth appealed, the Superior Court reversed, and we allowed the appeal to review the application of § 110 in this prosecution.

Title 18 Pa.C.S. § 110 states:

## § 110. When prosecution barred by former prosecution for different offense

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction . . . and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution; [or]

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was *within the jurisdiction of a single court* unless the court ordered a separate trial of the charge of such offense. . . .

(Emphasis added.) In this case, the issue in the second prosecution is whether all the offenses were "within the jurisdiction of a single court."

The trial court and the Superior Court agreed that all the offenses formed a single criminal episode. We recently addressed the determination of when multiple offenses are part of the same criminal episode for purposes of § 110 in *Commonwealth v. Bracalielly,* 540 Pa. 460, 658 A.2d 755 (1995), wherein we discussed at length how to apply the standard earlier set forth in *Commonwealth v. Hude,* 500 Pa. 482, 494, 458 A.2d 177, 183 (1983). *Hude* held that "where a number of charges are logically or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and waste of judicial resources." Under both *Bracalielly* and *Hude,* the charges in this case bore a close logical and temporal relationship so that a single criminal episode existed and separate trials would involve substantial duplication and waste of judicial resources. The Commonwealth concedes that all the offenses arose from the same criminal episode.

The only issue, therefore, is whether all the offenses were within the jurisdiction of a single court. The trial court held that they were but the Superior Court ruled they were not.

The jurisdiction of the courts of common pleas is set forth in Article V, section 5 of the Pennsylvania Constitution, which states: "There shall be one court of common pleas for each judicial district ... having unlimited original jurisdiction in all cases except as may otherwise be provided by law." In title 42 of the Pennsylvania Consolidated Statutes, the legislature has refined the constitutional grant of jurisdiction to the courts of common pleas:

### § 931. Original jurisdiction and venue

(a) **General rule.**—Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, *the courts of common pleas shall have unlimited*

*original jurisdiction of all actions and proceedings,* including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

....

**(c) Venue and process.**—Except as provided by Subchapter B of Chapter 85 (relating to actions against Commonwealth parties), *the venue of a court of common pleas concerning matters over which jurisdiction is conferred by this section shall be as prescribed by general rule.* The process of the court shall extend beyond the territorial limits of the judicial district to the extent prescribed by general rule....

42 Pa.C.S. § 931 (emphasis added). By constitution and by statute, the court of common pleas has unlimited original jurisdiction in all cases, actions, and proceedings, and is thus empowered, subject to a few statutory exceptions,[1] to decide any matter arising under the laws of this commonwealth.

To answer the question whether appellant's alleged cocaine sale in Allegheny County was within the jurisdiction of the Court of Common Pleas of Washington County, it is helpful to examine the reasoning of the Supreme Court of the United States in *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). The issue was whether a kidnap-murder carried out in two states was punishable in both states without violating the prohibition against double jeopardy. The Supreme Court premised its answer on the sovereignty of the two states, each of which had independent power to define crimes against the sovereign.

The dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy Clause.

The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act

1. For statutory exceptions, *see, e.g.,* 42 Pa.C.S. §§ 723, 725, 742, 761, 762, 763, 764.

violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct "offences." As the Court explained in *Moore v. Illinois,* 14 How. 13, 19, 14 L.Ed. 306 (1852), "[a]n offence, in its legal signification, means the transgression of a law." Consequently, when the same act transgresses the laws of two sovereigns, "it cannot be truly averred that the offender has been twice punished for the same offense; but only that by one act he has committed two offenses, for each of which he is justly punishable."

In applying the dual sovereignty doctrine, then, *the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns.* This determination turns on whether the two entities draw their authority to punish the offender from distinct sources of power. Thus, the Court has uniformly held that the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own "inherent sovereignty," not from the Federal Government. . . .

The States are no less sovereign with respect to each other than they are with respect to the Federal Government. Their powers to undertake criminal prosecutions derive from separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment.

*Id.* at 88–89, 106 S.Ct. at 437–38, 88 L.Ed.2d at 394–95 (citations omitted; emphasis added).

■ The logic of *Heath* leads to the conclusion that the offenses in this case were within the jurisdiction of a single court. The two counties are not separate sovereigns and do not derive their power to try felony drug cases from independent sources of power. Their subject matter jurisdiction flows from the sovereign Commonwealth of Pennsylvania and is not circumscribed by county territorial limits. Territorial applicability of the crimes code refers strictly to conduct occurring

inside or outside Pennsylvania, not to the county in which conduct occurred. 18 Pa.C.S. § 102.

A remaining difficulty is the Commonwealth's reliance on the common law rule that a criminal court lacks jurisdiction to try an offense that did not occur within the county. This court stated in *Commonwealth v. Boyle,* 516 Pa. 105, 112, 532 A.2d 306, 309 (1987):

> The law is clear that " 'the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of trial, or unless, by some statute, it need not....' " *Commonwealth ex rel. Chatary v. Nailon,* 416 Pa. 280, 283, 206 A.2d 43, 45 (1965), quoting *Commonwealth v. Mull,* 316 Pa. 424, 426, 175 A. 418, 419 (1934). For a county to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county. *Commonwealth v. Tumolo,* 455 Pa. 424, 317 A.2d 295 (1974).

Appellant's response [2] is that such a common law requirement is inconsistent with the Pennsylvania Constitution, adopted in 1968, Article V, section 1, which vests the judicial power of the Commonwealth in "a unified judicial system." Moreover, appellant asserts, no such requirement exists in civil cases.

The viability of *Boyle*'s statement that "the court has no jurisdiction of the offense unless it occurred within the county" depends on its constitutional underpinnings. Two constitutional precepts lead in opposite directions. On the one hand, the concept of the "unified judicial system" undermines the territorial stricture stated in *Boyle.* On the other hand, Article I, section 9, stating the rights of those accused in criminal prosecutions, guarantees the right to "trial by an impartial jury of the vicinage." The exact meaning of this right, however, is not clear, as "vicinage" is not a precise term.

*Commonwealth v. Reilly,* 324 Pa. 558, 188 A. 574 (1936), provides enlightenment. In *Reilly,* the district attorney of Fayette County and six prominent associates were indicted for

---

**2.** Amicus curiae, the Pennsylvania Association of Criminal Defense Lawyers, filed a helpful brief which elaborates the argument.

murder, together with five others indicted as accessories. The Attorney General, prosecuting the case, moved for a change of venue, alleging that a concerted effort was being made by the defendants to create sympathy for the defendants and prejudice against the Commonwealth by means of litigation to quash the indictments, by public protest meetings, and by sensational, inflammatory newspaper headlines and articles. The issue was whether the Commonwealth was entitled to a change of venue in a criminal prosecution to secure a fair and impartial trial.

The defendants opposed the change of venue pursuant to Article I, section 9 of the state constitution which guarantees to an accused a speedy trial before an impartial jury of the vicinage. The court gave this history:

> Blackstone states that at common law the accused traditionally had the right to be tried by a jury of the vicinage. When trial by jury began jurors were freeholders of the hundred who were familiar with the crime, the parties to it and the witnesses, but, as time advanced, it became apparent that the advantages derived from a jury so selected were overcome by the tendency of the juries "to intermix their prejudices and partialities in the trial of right." For this reason courts and Parliament gradually extended the area from which jurors could be drawn, although they were still termed jurors of the vicinage. In this country and England, the common law right of trial by jury of the county or vicinage was not unconditional, but the trial might be removed to another county upon application of either the crown, the prosecution or the accused when it was thought to be necessary to assure a "fair and impartial trial."

*Id.* at 566–67, 188 A. at 578 (citations omitted).

The court expounded on the meaning of the term "vicinage" in Article I, section 9:

> "Vicinage," used in our Constitution, is found in few others and is of uncertain meaning. It is not coterminus [sic] with a county and may, in fact, embrace more than one county; this is clearly established by our case of *Commonwealth v.*

*Collins,* 268 Pa. 295, 110 A. 738.... "The primary and literal meaning of vicinage is neighborhood or vicinity, but neither of these terms definitely indicates just what territory it embraces. What to one man might be the neighborhood or vicinity in which an act is committed, might to another be regarded as far distant from it. A county, on the other hand, is a definitely designated territory ..., and what is embraced within it cannot be a matter of doubt or uncertainty. In this respect its meaning is vitally different from that of vicinity."

While vicinage comprehends or includes the venue as is shown by *Commonwealth v. Collins,* supra, the two are not necessarily co-extensive. The main consideration is to give a speedy trial before an impartial jury drawn from an area broad enough to secure it. Therefore vicinage must expand itself to meet that situation and when, for potent reasons, the locality of the venue cannot produce such a jury, the venue must be moved within the vicinage to the place where an impartial jury can be obtained[ or, we might add, where a speedy trial can be had]. While we are not compelled, at this time, to define with exactness the extreme limits of "vicinage," enough has been said to demonstrate the trial may be removed to another county or venue, without sacrificing this constitutional guarantee.

*Id.* at 568–69, 188 A. at 579.

The court continued its discussion of the right of an accused to "an impartial jury of the vicinage" as follows:

In the states where the constitution provides that the jury shall be drawn from the "county" or "district" in which the offense is alleged to have been committed the higher courts do not agree on the right of the prosecutor to have a change of venue.... Some jurisdictions limit the right to change of venue to the accused alone and deprive the prosecutor of such relief....

There are other states where, under constitutional provisions similar to the above, courts have held a change of venue may be permitted upon the petition of the prosecutor. The conclusions in these cases are more consonant with

sound reason and support the institutions they are designed to protect.

... The preservation of society, the enforcement of law and order in great crises would be severely impeded if our constitution would be so construed as to prevent in any case the Commonwealth from having a change of venue. *But that right cannot be abused. The accused cannot be dragged all over the Commonwealth at its suggestion to be weighted down with the burden of an expensive trial.* For this reason the prosecution's request for a change of venue should be much more strictly scrutinized than one by the accused; before the court is moved to act, there should be the most imperative grounds.

*Id.* at 569–71, 188 A. at 579–80 (citations omitted; emphasis added).

From the foregoing discussion, we derive several points necessary to our decision in this case. First, vicinage is not synonymous with county or venue, but may embrace more than one county. Second, the place of trial, whether within or without the county where the alleged crime occurred, is a matter of venue, not jurisdiction,[3] notwithstanding the imprecise and confusing terminology used in *Commonwealth v. Boyle, supra.* Third, trial in a county other than the one where the offense occurred is not constitutionally prohibited. Fourth, trial outside the county is a mechanism which must be used sparingly, to prohibit dragging the accused all over the commonwealth and burdening him with an expensive trial at the whim of the prosecution.

We emphasize that this case concerns only charges stemming from the same criminal episode under § 110. Under

---

**3.** It is important to distinguish jurisdiction from venue. Jurisdiction is the legal right by which judges exercise their authority to decide cases. Venue, on the other hand, is the right of a party to have the action brought and heard in a particular judicial district, or locality, and is related to the convenience of the litigants. Jurisdiction of subject matter can never attach nor be acquired by consent or waiver of the parties, while venue may always be waived. *McGinley v. Scott,* 401 Pa. 310, 316, 164 A.2d 424, 427–28 (1960).

*Bracalielly* and *Hude*, an accused has substantial safeguards [4] against prosecutorial forum-shopping or being "dragged all over the Commonwealth," for a single criminal episode exists only when multiple charges bear a close logical and temporal relationship and separate trials would involve substantial duplication and waste of judicial resources.

In summary, we hold that the Court of Common Pleas of Washington County had subject matter and personal jurisdiction over the offenses allegedly committed by appellant in Allegheny County.[5] Appellant's right to a speedy trial by an impartial jury of the vicinage, Pa. Const. Article I, section 9, is a matter of venue, and there is no constitutional deprivation occasioned by joining all charges stemming from a single criminal episode for trial in one county despite the fact that some of the charges arose in a different county. Under 18 Pa.C.S. § 110, then, all the charges were within the jurisdiction of a single court and should have been joined in a single trial; the pending Allegheny County prosecution is barred by the former Washington County prosecution and conviction. The order of the Superior Court, permitting a second trial, must be reversed.

Order of the Superior Court reversed and appellant discharged.

4. Ironically, the arguments in this case underscore those safeguards. The Commonwealth, which should have, but did not, seek trial of the Allegheny County offense in the Washington County court of common pleas, now argues that the Washington County court lacks jurisdiction over the Allegheny County charges. *Commonwealth v. Reilly* destroys that argument. The accused himself, joined by amicus Pennsylvania Association of Criminal Defense Lawyers, argues that his constitutional right to trial before a jury of the vicinage is not offended by trial of the Allegheny County charges in Washington County.

We agree. The purpose of joining all charges from the same criminal episode, pursuant to 18 Pa.C.S. § 110, is to shield the accused from duplicitous, sequential trials. Such trials promise unnecessary delay, unnecessary expense to the accused and the Commonwealth, unnecessary duplication of judicial resources, and unnecessary aggravation to the accused and witnesses.

5. Likewise, the Court of Common Pleas of Allegheny County had jurisdiction over the offenses committed in Washington County as well as those committed in Allegheny County, when all the offenses arose from the same criminal episode.

NIX, former C.J., did not participate in the consideration or decision of this case.

CAPPY, J., files a concurring opinion.

NIGRO, J., concurs in the result.

NEWMAN, J., files a dissenting opinion in which CASTILLE, J., joins.

CAPPY, J., concurring.

I concur in the result reached by the majority. I write to emphasize two points: 1) that at common law, the subject matter jurisdiction of the trial courts was not limited to crimes which occurred in the county in which the court sat and 2) even if there were such a common law rule, it was abrogated by the enactment of Article V, Section 5 of the Constitution of 1968 and 42 Pa.C.S.A. § 931.

Both the majority and the dissent seem to accept the proposition that at common law the subject matter jurisdiction of the courts of common pleas was limited to crimes which occurred within the county in which the court sat. However, I question whether there was ever a common law rule which limited the subject matter jurisdiction of the courts of common pleas to crimes which occurred in the county in which the court sat. Indeed, in England there existed the practice of the Court of King's Bench transferring criminal cases from the county in which the crime was committed to a different county wherein the crime was not committed so that the ends of justice may be served. *See, e.g., Rex v. Cowle,* 2 Burr. 834, 859–60 (Lord Mansfield wrote "[s]o, in ... England itself where an impartial Trial cannot be had in the proper County, it shall be tried in the next."); *Rex v. Harris,* 3 Burr. 1330. *See also,* 2 John Bayly Moore, *A Digested Index to the Term Reports,* 234 (1819) (citing cases).

I readily admit that there certainly was a common law right on the part of the defendant to be tried in the county wherein the offense was committed. *See Newberry v. Commonwealth,* 192 Va. 819, 66 S.E.2d 841 (1951)(speaking in terms of the common law right of the defendant to be tried in the county in

which the offense was committed and concluding that such right was not absolute). *Cf. Commonwealth v. Reilly,* 324 Pa. 558, 567, 188 A. 574, 578 (1936)("In this country and England, the common law **right of trial by jury of the county or vicinage** was not unconditional.") (emphasis added). The original reason for the defendant's right to be tried in the county in which the crime occurred is apparent when one considers the original role of jurors in cases. As the New Jersey Supreme Court observed in *State v. DiPaolo,* 34 N.J. 279, 285, 168 A.2d 401, 404 (1961), *cert. denied,* 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961):

> a rule developed at early common law that a prosecution be instituted in the county in which the crime was committed. . . . [T]he rule reflected a practice made necessary by circumstances which no longer exist. Communities were scattered and travel difficult. Petit jurors decided causes upon their personal knowledge rather than upon the testimony of witnesses. . . .

*See also* Henry G. Connor, *The Constitutional Right to a Trial by a Jury of the Vicinage,* 57 U.Pa.L.Rev. 197, 204 (1909).

> The ancient writ commanded the sheriff to summon "free and lawful men of the neighborhood, etc." Glanville 32. "And the reason wherefor the jury must be of the neighborhood is for that *vicinus facta vicine presumita scire.*"[1] Coke Litt. 158 b. and so are all the old writers.

William W. Blume, *The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue,* 43 Mich.L.Rev. 59, 61 (1944) ("[s]o long as jurors were expected to decide cases from their own knowledge or from information furnished by some of their own number, it was, of course, impossible for the jurors of one county to try a crime committed in another county or outside the country"). *U.S. v. Guiteau,* 1 Mackey 498, 535 (Supreme Ct. of the Dist. Col. 1882).

> This power of the jury to find upon their own knowledge was recognized by the courts long after the time of Edward

---

1. *"Vicinus facta vicine presumita scire"* means "one living in the neighborhood is presumed to know the things done in the neighborhood."

VI, and even as late as 1670, when it was said in Bushel's case, by the court of common pleas, (Vaughan Rep., 135), that the jury being returned from the vicinage whence the cause of action arises, the law supposes them to have sufficient knowledge to try the matters in issue, "and so they must, though no evidence were given on either side in court." It was only when the practice of new trials was introduced that juries were no longer allowed to give verdicts upon their own knowledge. [citations omitted] When this power was finally annulled by the remedy of new trials, the trial by jury had been practised for five centuries at least (Starkie, 398)[.]

. . . .

This power to act on personal knowledge fixed the limitation of the inquiry, and the jury was understood to have cognizance of those matters only which they might thus know.

Not only do we no longer allow jurors to decide issues based upon their presumed knowledge of the case, we positively disapprove of such a practice. Even though the original rationale supporting the requirement that alleged criminals be tried in the county in which the crime occurred is no longer applicable, the requirement itself should not necessarily fall. Such a requirement may still serve the purposes of preventing oppressive conduct by the prosecution, *e.g.*, dragging a defendant far away from friends and support and from ready access to the site and evidence of the crime and presumably the ready access to witnesses of the crime. In addition, such a requirement may serve the purpose of convenience to the court which sits in that county in the efficient administration of justice as well as the convenience of witnesses to the crime.

Nevertheless, just because the defendant had a personal right at common law to be tried in the county in which the offense was committed and just because such a right may continue to serve the efficient administration of justice, it does not follow that another county wherein the crime was not committed lacks subject matter jurisdiction over the case. Indeed, the mere fact that at common law, cases could be

transferred from one county where the crime was committed to another county supports the idea that the second county had subject matter jurisdiction over the case. Even were it otherwise in England, the practice in the Commonwealth of Pennsylvania is too clear to be ignored; our history is replete with examples of criminal cases wherein venue was transferred from the county in which the crime was committed to another county and this fact supports the idea that the second county did not lack jurisdiction. Indeed the existence of 42 Pa.C.S.A. § 5106, which provides "[t]he power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be prescribed by law" lends support to the idea that more than one county has jurisdiction.[2] Pa.R.Crim.P. No. 312, which specifically contemplates a court of common pleas granting a change of venue of a trial from one county to another county, also supports the idea that more than one county has jurisdiction.[3]

At this point it would be helpful to review the distinction between subject matter jurisdiction and venue. In *McGinley*

**2.** This statutory power of the courts to change venue is distinct from this court's inherent power pursuant to its King's Bench powers to change venue in criminal cases by writ of certiorari. *Compare Commonwealth v. Balph*, 111 Pa. 365, 3 A. 220 (1886)(setting forth this court's King's Bench power to transfer criminal cases to another county) with *Commonwealth v. Sacarakis*, 196 Pa.Super. 455, 175 A.2d 127 (1961) and *Commonwealth v. Mangan*, 31 Pa. D. & C.2d 635 (1963) (both cases discuss the statutory basis for the power of the courts of common pleas to change venue.)

**3.** The dissent relies upon a quote from *Commonwealth v. Boyle*, 516 Pa. 105, 112–13, 532 A.2d 306, 309–10 (1987) which states

[t]he law is clear that " 'the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of trial or unless by some statute, it need not....' " It should be noted that the statutes which authorize a change of venue are not such statutes which fall within the meaning of the quote from *Boyle*. While the venue statutes purport to give the courts power to change venue, those statutes do not purport to bestow subject matter jurisdiction. Indeed 42 Pa.C.S.A. § 931(c) specifically contemplates that a change of venue can only be made to a court which already possesses subject matter jurisdiction; "the venue of a court of common pleas concerning **matters over which jurisdiction is conferred by this section** [i.e., § 931(a) & (b)] shall be prescribed by general rule." (emphasis added)

*v. Scott,* 401 Pa. 310, 316, 164 A.2d, 424, 427–28 (1960), this court stated that

> [j]urisdiction of subject matter relates to the competency of a court to hear and determine controversies of the general nature of the matter involved.... Venue is the right of a party sued to have the action brought and heard in a particular judicial district.

Thus, as the majority points out, the subject matter jurisdiction of the courts of common pleas as defined by the Constitution and statute is general and is not limited to the territory of the county wherein the court sits. On the other hand, the defendant's common law right to be tried in the county wherein the crime occurred is, in my considered opinion, nothing more than the historical antecedent of what we refer to today as venue.[4]

Although the cases cited by the dissent do speak in terms of the "jurisdiction" of the court of common pleas based upon the locus of the crime, I believe that if those cases truly meant "jurisdiction" then they are irreconcilable with the cases, statutes and rules which permit a change of venue to a county other than that in which the crime occurred.[5] It is better to understand the cases cited by the dissent as standing for the

4.  The majority correctly notes that venue is the right of the party to have the case brought and heard in a particular judicial district. Majority slip op. at 10. However, the majority then goes on to assert that "Appellant's right to a speedy trial by an impartial jury of the vicinage, Pa. Const. Article I, Section 9, is a matter of venue ...." majority slip op. at 12. I cannot agree. Vicinage refers to the place from where the jury must be drawn which is distinct from venue which refers to the judicial district in which the case must be tried. For example, a crime may occur in Bucks County, even though as a matter of vicinage the jury may have to be chosen from the vicinity of Bucks County, nevertheless, the trial may take place outside of Bucks County as a matter of venue.

5.  Two cases in particular which are relied upon by the dissent must be mentioned. In *Commonwealth v. Simeone,* 222 Pa.Super. 376, 379, 294 A.2d 921 (1972), the court quotes *Simmons v. Commonwealth,* 5 Binney 617, 628–29 (Pa.1813) as follows

    The historic foundation for the rule [that subject matter jurisdiction of criminal courts extends only to offenses committed within the county of trial] is that "by the ancient law, 'all offenses were said to

proposition that the defendant's conditional right to be tried in the county in which the crime occurred was violated without a sufficient justification being shown by the Commonwealth for such a violation, and therefore, some remedy must be granted to the defendant to vindicate that right.

However, as stated before, to say that a defendant has a right to be tried in the county in which the crime occurred is

> be done against the peace of the county; *contra pacem vice comitis,*' 1 Black. 117"

In support of the contention that all offenses were said to be done against the peace of the county, *Simmons v. Commonwealth* cites 1 Blackstone 117. However, reading the sentence in context makes clear that offenses were not said to be done against the county because they were committed in the territorial limits of the county; rather, they were said to be committed against the county only when they were tried in the court of the sheriff. The following is the context of the sentence from 1 Blackstone 117:

> Counties palatine are so called *a palatio*, because the owners thereof, the earl of Chester, the Bishop of Durham, and the duke of Lancaster, had in those counties *jura regula*, as fully as the king hath in his palace; *regalem potestatem in omnibus*, as Bracton expresses it (u). They might pardon treasons, murders, and felonies; they appointed all judges and justices of the peace; all writs and indictments ran in their names, as in other counties in the king's; and all offenses were said to be done against their peace, and not as in other places, *contra pacem domini regis* (w). And indeed by the ancient law, in all peculiar jurisdictions, offenses were said to be done against his peace in whose court they were tried: in a court-leet, *contra pacem domini;* in the court of a corporation, *contra pacem ballivorum;* in the sheriffs' court or tourn, *contra pacem vice-comitis* (x).

Moreover, the phrase "in all peculiar jurisdictions" seems to indicate that the practice of saying the offenses were committed against his peace in whose court they were tried was limited to the three counties palatine.

The second case is *Commonwealth v. Boyle*, 516 Pa. 105, 112, 532 A.2d 306, 309 (1987) wherein this court stated that " 'the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of the trial ....' " quoting *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 283, 206 A.2d 43, 45 (1965) which in turn quoted *Commonwealth v. Mull*, 316 Pa. 424, 426, 175 A. 418, 419 (1934). First, it should be noted that the court in *Mull* made the statement regarding the locus of the crime as delimiting the jurisdiction of the court without citation to any authority. Secondly, the court in *Mull* clearly confused the ideas of jurisdiction and venue. Although the court in *Mull* originally stated the issue as one of jurisdiction, the court then goes on to conclude "[t]he **venue** being substantially in issue, it was error for the trial judge to refuse defendants' request to charge as to it." *Mull*, 316 Pa. 424, 427, 175 A. 418, 419 (1934)(emphasis added).

not to imply that another county lacks jurisdiction of the case. With due respect, I believe that the cases relied upon by the dissent either confuse the concept of jurisdiction and venue or use the language of jurisdiction and venue loosely. That this is the case is not surprising, as we have previously observed, "in cases where the differentiation of 'venue' and 'jurisdiction' was not material to the decision, courts have at times inappropriately used the terms interchangeably. See, e.g., *Merner v. Department of Highways*, 375 Pa. 609, 101 A.2d 759." *McGinley v. Scott*, 401 Pa. at 318 n. 2, 164 A.2d at 428 n. 2 (1960). *See also Commonwealth v. Bracalielly*, 540 Pa. 460, 478–79 n. 4, 658 A.2d 755, 764–5 n. 4 and accompanying text (1995)(Zappala, J., dissenting); *Commonwealth v. Bertels*, 260 Pa.Super. 496, 500 n. 5, 394 A.2d 1036, 1038 n. 5 (1978) *aff'd*, 491 Pa. 187, 420 A.2d 404 (1980)("the question of venue between the counties has been treated as one of subject matter jurisdiction." [citing cases] ).

Even if there had been a common law rule which limited the subject matter jurisdiction of the courts of common pleas to crimes occurring in the county in which the court sat, I do not believe such a common law rule survived the enactment of Article V, Section 5 of the Pennsylvania Constitution of 1968 which provides that "[t]here shall be one court of common pleas for each judicial district .... having **unlimited jurisdiction in all cases except as otherwise may be provided by law**" (emphasis added).

The dissent appears to believe that word "law" in the phrase "except as may otherwise be provided by law" includes the alleged common law rule that subject matter jurisdiction is limited to the county in which the crime occurred. While one possible meaning of "law" is "common law," "law" may also signify only statutory law enacted by the General Assembly. *See e.g., McKinley v. School District of Luzerne*, 383 Pa. 289, 118 A.2d 137 (1955); *McCormick v. Fayette Co.*, 150 Pa. 190, 24 A. 667 (1892); *Baldwin v. City of Philadelphia*, 99 Pa. 164 (1881); *County of Crawford v. Nash*, 99 Pa. 253 (1881); *Murphy v. Bradley*, 113 Pa.Commw. 387, 537 A.2d 917 (1988).

As the term "law" may mean only statutory law or both statutory law and common law, it is ambiguous. The general principles governing the construction of statutes applies also to the interpretation of Constitutions. *Perry County Telephone & Telegraph v. Public Service Commission,* 265 Pa. 274, 108 A. 659 (1919); *Booth & Flinn, Ltd. v. Miller,* 237 Pa. 297, 85 A. 457 (1912). Those rules of statutory construction inform us that only where there is ambiguity, may we have resort to the rules of statutory construction. *See* 1 Pa.C.S.A. § 1921(b); *See also In re Kritz' Estate,* 387 Pa. 223, 227, 127 A.2d 720, 723 (1956)("rules of statutory construction are to be resorted to only when there *is* [patent or latent] ambiguity.") Since the word "law" as used in Article V, Section 5 is ambiguous, we may resort to the rules of statutory construction. Those rules direct that where words are ambiguous, the object of resolving that ambiguity by interpretation is to ascertain and effectuate the intent of the drafters. 1 Pa. C.S.A. § 1921(a). Moreover, the "constitution is entitled, like other instruments, to a construction, as nearly as may be, in accordance with the intent of its makers." *Moers v. City of Reading,* 21 Pa. 188, 200 (1853). *See e.g., Booth & Flinn,* 237 Pa. at 306, 85 A. at 459 ("There is nothing in Section 7, of Article III, that shows the framers of the Constitution intended that this section should apply....") Accordingly, our task is to discover the intent of the drafters with regard to the meaning which should be ascribed to "law" as used in Article V, Section 5 of the Constitution of 1968.

In ascertaining the intent of the drafters, we may resort to the contemporaneous legislative history. 1 Pa.C.S.A. § 1921(c)(7). The only evidence which my research has been able to discover clearly indicates that the drafters did not intend the word "law" as used in Article V, Section 5, to include the common law. In *Debates of the Pennsylvania Constitutional Convention: Journal of the Convention,* vol. II, p. 1397 (1969) (hereinafter "Debates") there is an "Address To The People of Pennsylvania" prepared which "presents the proposals for constitutional revision adopted by the limited Constitutional Convention which will be submitted to the

voters of Pennsylvania...." In this Address there is a "Summary and Explanation" which gives explanations of the proposed constitutional amendments. The explanation accompanying Article V, section 5 states "[t]he jurisdiction of the several courts [of common pleas] and of the justice of the peace is left to the determination of the **General Assembly**." *Debates,* vol. II, p. 1414 (emphasis added). I find this to be persuasive evidence that the drafters intended that the General Assembly determine the jurisdiction of the common pleas court by statute.[6] Accordingly, unless the General Assembly enacted a statute which incorporated the alleged common law rule of county wide jurisdiction, such a rule would not survive the enactment of Article V, Section 5 of the Constitution of 1968.

While the General Assembly could have adopted by statute the alleged common law rule which restricted the subject matter of the courts of common pleas to crimes which occurred in the county, the General Assembly did not do so. Rather, pursuant to Article V, Section 5, the General Assembly enacted 42 Pa.C.S.A. § 931, defining the jurisdiction of the courts of common pleas. 42 Pa.C.S.A. § 931, entitled "Original jurisdiction and venue" provides as follows:

(a) **General rule.**—Except where exclusive original jurisdiction of an action or proceeding is by statute or general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have **unlimited original jurisdiction of all actions and proceedings**, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

6. At the end of the explanatory comments, there appears the following:
   The above Summary and Explanation is offered for the convenience of the people only and is not to be considered an official interpretation of the proposals to which it relates.
   *Debates,* vol. II, p. 1431. Despite this caveat, I find the explanation of the term "law" as used in Article 5, Section 5 to constitute some evidence of the drafters' intent and, as such, appropriate grist to resolve the ambiguity.

**(b) Concurrent and exclusive jurisdiction.**—The jurisdiction of the courts of common pleas under this section shall be exclusive except with respect to actions and proceedings concurrent jurisdiction of which is by statute or by general rule adopted pursuant to section 503 vested in another court of this Commonwealth or in the district justices.

**(c) Venue and process.**—Except as provided by Subchapter B of Chapter 85 (relating to actions against Commonwealth parties), the venue of a court of common pleas concerning matters over which jurisdiction is conferred by this section shall be as prescribed by general rule.

(emphasis added). I note that these provisions, Art. V, Sec. 5 and 42 Pa.C.S.A. § 931(a) and (b), regarding jurisdiction do not in any way mention or imply that the subject matter jurisdiction of the courts of common pleas are bounded by county territorial limits. Indeed, if anything, both Article V, Section 5 and 42 Pa.C.S.A. §§ 931(a) speak in terms of "unlimited jurisdiction" and "unlimited original jurisdiction" respectively, clearly indicating the rejection of any county territorial limitations upon the jurisdiction of the courts of common pleas.

That this is the case is made even more clear when we consider the predecessor statute to 42 Pa.C.S.A. § 931 which was 17 P.S. § 251 and which provided that

The courts of common pleas shall have jurisdiction and power **within their respective counties** to hear and determine all pleas, actions and suits, and causes, civil, personal, real and mixed....

(emphasis added). In enacting 42 Pa.C.S.A. § 931, the legislature clearly rejected the language of 17 P.S. § 251 which limited the jurisdiction of the courts of common pleas to "their respective counties." Where words of a later statute differ from those of a previous one, they presumably are intended to have a different construction. *Commonwealth v. Moon*, 383 Pa. 18, 117 A.2d 96 (1955). If there were any ambiguity as to the Legislature's use of the phrase "the courts of common pleas shall have unlimited original jurisdiction of all actions

and proceedings" in 42 Pa.C.S.A § 931(a), the legislature's deliberate choice of dropping the previous statutory language which limited the jurisdiction of the courts of common pleas to "their respective counties" may be seen as evidence of legislative intent to reject such a limitation upon the jurisdiction of those courts. 1 Pa.C.S.A. § 1921. Accordingly, I find that if there ever existed a common law rule which limited the subject matter jurisdiction of the courts of common pleas to only those crimes which occurred within the county, such a rule was rejected by the enactment of Article V, Section 5 of the Pennsylvania Constitution and 42 Pa.C.S.A. § 931(a). Thus, if ever there were such a common law rule, it was abrogated.[7]

The dissent notes the fact that this Court decided *Commonwealth v. Boyle, supra* and *Commonwealth v. Conforti,* 533 Pa. 530, 626 A.2d 129 (1993) long after the enactment of Article V, Section 5 and 42 Pa.C.S.A. § 931. These cases cannot be read as this court's approval by implication of the alleged common law rule restricting jurisdiction to the county in which the crime occurred. That we did not reach in those cases the issue of whether the alleged common law rule which limited jurisdiction to crimes occurring within the county survived the enactment of Article V, Section 5, and 42 Pa.C.S.A. § 931 is not surprising. A review of both the Superior Court opinion and this court's opinion in *Boyle* suggests this issue was not raised, unlike in the case at bar where this precise issue was indeed squarely raised and ably argued. That this court will not reach issues which are not raised is a sound jurisprudential practice long adhered to by this court. A review of the briefs submitted in *Commonwealth v. Conforti,*[8] as well as the opinion therein likewise reveals that this issue was not raised therein. Thus, this court's silence with respect to this issue in

7. While I am aware of the interpretive principle that a statute does not work a change in the common law unless the intent to alter it clearly appears, *Commonwealth v. Hartung,* 156 Pa.Super. 176, 39 A.2d 734 (1944), I believe that the foregoing clearly demonstrates the legislative intent to abrogate the alleged common law rule of county wide jurisdiction.

8. Unfortunately, the briefs in the *Boyle* case are no longer available to this court.

both *Boyle* and *Conforti* cannot be construed as rendering an opinion on the constitutional viability of the alleged common law rule.

To summarize then, the common law of Pennsylvania did not have a rule that limited the subject matter jurisdiction of the courts of common pleas in criminal cases to those crimes which occurred in the county. Rather, the cases cited for such a proposition are best understood as dealing with the common law **right of a defendant** to be tried in the county in which the crime occurred. Secondly, even if there were such a common law rule, it was abrogated by the enactment of Article V, Section 5 of the Pennsylvania Constitution and 42 Pa.C.S.A. § 931.

For the foregoing reasons, I join the judgment of the majority in discharging the appellant because the offenses he committed in Washington County and Allegheny County were within the jurisdiction of a single court.

NEWMAN, J., dissenting.

Because I disagree with the Majority that distinct drug transactions committed in two counties are within the "jurisdiction of a single court" under Section 110 of the Crimes Code, 18 Pa.C.S. § 110(1)(ii), I respectfully dissent.

Section 110 bars a subsequent prosecution where the former prosecution resulted in a conviction and the subsequent prosecution is for "any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the first trial and was within *the jurisdiction of a single court* ...." 18 Pa.C.S. § 110(1)(ii)(emphasis added). Section 110 does not define "jurisdiction of a single court." This Court has not previously decided the meaning of Section 110's "jurisdiction of a single court" language in a case involving multi-county offenses.

The Pennsylvania Constitution defines the original jurisdiction of the courts of common pleas as unlimited in all cases "except as may otherwise be provided by law." Pa. Const. Art

V, § 5. The Majority recognizes that the Judicial Code circumscribes the original jurisdiction of the courts of common pleas in civil actions with certain statutory exceptions, not relevant here. 42 Pa.C.S. § 931. However, I respectfully note that the Majority disregards the well-established common law rule that the locus of the crime dictates the court of common pleas in which charges must be brought.

This Court has consistently stated:

[t]he law is clear that " 'the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of trial, or unless, by some statute, it need not. . . . ' " For a county to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county. In order to base jurisdiction on an overt act, the act must have been essential to the crime, an act which is merely incidental to the crime is not sufficient.

*Commonwealth v. Boyle*, 516 Pa. 105, 112–13, 532 A.2d 306, 309–10 (1987) (citations omitted). *See, also, Commonwealth v. Nailon*, 416 Pa. 280, 283, 206 A.2d 43, 45 (1965); *Commonwealth v. Mull*, 316 Pa. 424, 426, 175 A. 418, 419 (1934).

As explained by our Superior Court in *Commonwealth v. Simeone*, 222 Pa.Super. 376, 294 A.2d 921 (1972), "[e]mbedded in the common law is the proposition that subject matter jurisdiction of criminal courts extends only to offenses committed within the county of trial." *Id.* at 377–78, 294 A.2d at 922. The historic foundation for the rule is that, "[b]y the ancient law, 'all offenses were said to be done against the peace of the county. . . .' Fiction in civil cases . . . has dispensed with this as to actions purely personal, but in criminal actions *never.*" *Id.* at 379, 294 A.2d at 922 (quoting *Simmons v. Commonwealth*, 5 Binney 617, 628–29 (1813)). The *Simeone* Court recognized that Pennsylvania case law has presented some confusion between the language of jurisdiction and that of venue. The court noted, however, numerous opinions that address the jurisdiction of criminal courts to try cases when it is alleged that certain elements of the prosecuted crimes occurred in different counties. Therefore, the court concluded

that "there is no doubt that the actuality of what our courts have done is to treat the place of the crime as determining which court has the power to try the offense." *Id.* at 379, 294 A.2d at 922.

Thus, the Superior Court has consistently interpreted the Section 110 "jurisdiction of a single court" as circumscribed by county territorial limits. *Commonwealth v. Caden,* 326 Pa.Super. 192, 473 A.2d 1047 (1984); *Commonwealth v. Nichelson,* 294 Pa.Super. 438, 440 A.2d 545 (1982); *Commonwealth v. Harris,* 275 Pa.Super. 18, 418 A.2d 589 (1980). In *Nichelson,* the defendant carjacked a victim at gunpoint in Philadelphia County, drove to Chester County where he attempted to kill the victim, and then returned to Philadelphia County where he was apprehended while attempting to use the victim's credit card. Charges arising in each county were filed in each respective county. Following his conviction in Philadelphia County, the defendant filed a motion to quash the informations in Chester County under Section 110. The Superior Court affirmed the trial court's denial of his motion, reasoning that the Chester County Court of Common Pleas had jurisdiction of the charges arising in that county.

We recently reaffirmed the territorial basis for common pleas court jurisdiction in *Commonwealth v. Conforti,* 533 Pa. 530, 626 A.2d 129 (1993). In *Conforti,* a prosecution for multi-county offenses arising from a continuous criminal episode, the defendant argued that the trial court lacked jurisdiction over crimes that had occurred outside the county of trial. We reiterated that a court has no jurisdiction of an offense unless it occurred within the county of trial or unless a statute confers jurisdiction on the court. We then affirmed the trial court's conclusion that the Journey Act [1] conferred jurisdiction on that court for all the alleged offenses, including those that

---

1. Act of March 31, 1860, P.L. 427, *as amended,* 19 P.S. § 525. Although this Act was apparently repealed, it is retained by virtue of 42 Pa.C.S. § 20003(b). *Conforti,* 533 Pa. at 537 n. 1, 626 A.2d at 130 n. 1. Where a defendant commits several crimes during a journey through more than one jurisdiction, the Journey Act may vest jurisdiction for all the offenses in any county in which an offense was committed. *Conforti.* Neither party addressed application of the Journey Act to this case.

had occurred during the defendant's journey through more than one county.

Here, however, the Majority rejects the traditional county-wide territorial basis for common pleas court jurisdiction espoused in *Boyle* as inconsistent with the concept of a unified judicial system. The Majority does not discuss *Conforti*. I note, however, that this Court decided *Boyle* and *Conforti* after the adoption of Article V, § 1 (providing for a unified judicial system) and Article V, § 5 (relating to the courts of common pleas) of the Pennsylvania Constitution and after amendment of 42 Pa.C.S. § 931 (relating to jurisdiction of the courts of common pleas). Further, the Majority's reliance on the concept of a unified judicial system in support of its jurisdictional analysis is suspect in light of this Court's decisions in *Commonwealth v. Beatty,* 500 Pa. 284, 455 A.2d 1194 (1983), and *Commonwealth v. Taylor,* 513 Pa. 547, 522 A.2d 37 (1987).

In *Beatty,* despite the concept of a unified judicial system, this Court preferred a traditional jurisdictional analysis for purposes of Section 110. In that case, we held that a conviction for a summary offense does not bar a subsequent prosecution for aggravated assault arising from a single criminal episode because, we held, the two offenses were not within the jurisdiction of a single court. We reasoned that the summary offense was a matter within the original jurisdiction of the district justice whereas the aggravated assault was within the jurisdiction of the court of common pleas. In reaching our conclusion, we recognized, however, the concurrent jurisdiction of the court of common pleas over summary offenses pursuant to 42 Pa.C.S. § 931(b). Nevertheless, we construed the phrase "within the jurisdiction of a single court" to give effect to the traditional division of labor in our court system, casting the court of common pleas in the role of reviewing tribunal as opposed to the court of original jurisdiction for summary offenses.

The Majority also declares that the county-wide territorial analysis of common pleas court jurisdiction is undermined by the constitutional guarantee of the right to trial by an impar-

tial jury of the vicinage. I do not disagree with the Majority's conclusion that vicinage is a matter of venue. I, however, disagree with the Majority's conclusion that, notwithstanding *Boyle*, the locus of a crime is a matter of venue and not jurisdiction for Section 110 purposes. The Majority correctly describes venue as the right of a party to have an action brought and heard in a particular locality, and jurisdiction as the competency of a court to hear and decide controversies in the nature of the matter involved. *McGinley v. Scott*, 401 Pa. 310, 164 A.2d 424 (1960). Despite any imprecision in this Court's usage of the term "jurisdiction" in *Boyle* and *Conforti*, no constitutional right precludes application of the well-established rule that the locus of the crime determines the county in which an action must be brought for purposes of Section 110.

That counties lack the status of independent sovereigns is not inimical to the territorial analysis of common pleas court jurisdiction for Section 110 purposes. Under the dual sovereignty doctrine, articulated in *Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985), two states may prosecute an accused for the *same* conduct. It is well settled, however, that no two courts of common pleas may prosecute an accused for the same criminal act. *Commonwealth v. Downs*, 334 Pa.Super. 568, 483 A.2d 884 (1984)(citing *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977)). In contrast, here, the issue is whether two courts of common pleas may prosecute *separate* crimes occurring within each county of trial. Thus, I disagree with the Majority Opinion that the logic of *Heath* leads to the conclusion that the offenses in this case are within the jurisdiction of a single court.

Further, I do not agree with the Majority's statement that *Commonwealth v. Bracalielly*, 540 Pa. 460, 658 A.2d 755 (1995), and *Commonwealth v. Hude*, 500 Pa. 482, 491, 458 A.2d 177, 181 (1983), adequately limit the interpretation of a "single criminal episode" so as to provide a substantial safeguard against prosecutorial forum-shopping or "dragging the accused all over the Commonwealth." In *Hude*, this Court held that a series of marijuana sales to the same individual on

twenty separate days, for more than a three to four-month period, constituted a single criminal episode. This Court reasoned that separate prosecutions for the drug sales involved a substantial duplication of factual and legal issues, particularly where prosecution of each charge rested solely on the credibility of a single witness.

We reached a contrary result in *Bracalielly* where the defendant had participated in four drug transactions during a two to three-week period in two different counties. The critical factor that distinguished *Bracalielly* from *Hude* was the involvement of two different law enforcement agencies. Therefore, the proof of each drug transaction in each county would not have rested solely on the credibility of a single witness, but would have required the testimony of different police officers and experts and the establishment of separate chains of custody.[2]

Here, while purchasing cocaine from Appellant Roosevelt E. McPhail on or about June 26, 1990, undercover narcotics agent Donald Alston also arranged to purchase a larger amount at a later date. On June 27, 1990, Officer Alston and McPhail then travelled to another county to complete the pre-arranged transaction. Prosecution of both the June 26, 1990 and June 27, 1990 offenses would substantially depend upon the credibility of Officer Alston. The Commonwealth conceded that the drug transactions, here, formed part of the same criminal episode pursuant to *Bracalielly* and *Hude*.

I believe, however, that in *Bracalielly* and *Hude*, this Court erred in extending the meaning of the "same conduct or [conduct] arising from the same criminal episode" to include separate and distinct drug transactions. Before *Bracalielly* and *Hude*, this Court applied Section 110 to bar a subsequent prosecution where the second offense arose from precisely the

2. In *Commonwealth v. Starr*, 540 Pa. 460, 658 A.2d 755 (1995), the companion case to *Bracalielly*, we also held that two drug transactions on two different dates were not part of the same criminal episode. Although the Commonwealth relied on the same confidential informant to facilitate each transaction and both transactions were part of an ongoing investigation, Starr failed to show how the transactions themselves were related.

same criminal episode. *See, e.g., Commonwealth v. Stewart,* 493 Pa. 24, 425 A.2d 346 (1981)(search of defendant revealed possession of pistol and heroin at the same time); *Commonwealth v. Muffley,* 493 Pa. 32, 425 A.2d 350 (1981)(search ·of defendant revealed possession of marijuana and LSD). Subsequently in *Hude,* this Court engrafted a "logical relationship" test to the Section 110 inquiry, drawing from the "same transaction" analysis of compulsory counterclaims. Pursuant to the logical relationship test, this Court has analyzed whether the offenses present a substantial duplication of factual and/or legal issues. Thus, this Court has determined that the definition of the "same criminal episode" is no longer limited to acts that immediately connect in time.

Such an extension of the "same criminal episode" inquiry thwarts the purposes of Section 110 by facilitating prosecutorial forum shopping. Further, where, as here, a defendant has participated in two discrete drug transactions, where the possession, sale and delivery of the illegal substances has occurred on two separate occasions in two counties, the *Bracalielly* and *Hude* analysis interferes with the inherent jurisdiction of each county to try the offenses against it.

I conclude that the Allegheny County charges and the Washington County charges were not within the jurisdiction of a single court within the meaning of Section 110. The charges arising in Allegheny County were properly brought in the Court of Common Pleas of Allegheny County. Therefore, Section 110 does not bar prosecution of the charges in Allegheny County. Accordingly, I would affirm the judgment of the Superior Court, reversing the trial court's dismissal of the Allegheny County charges.