**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Sandra COUCH, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 28, 1999.

Filed April 23, 1999.

David Crowley, Bellefonte, for appellant.

J. Karen Arnold, Asst. Dist. Atty., Bellefonte, for Com., appellee.

Before CAVANAUGH, EAKIN and OLSZEWSKI, JJ.

CAVANAUGH, J.:

¶ 1 Sandra Couch[1] appeals from the judgment of sentence imposed by the Court of Common Pleas of Centre County after her convictions of interference with the custody of a child, concealing the whereabouts of a child, burglary and criminal trespass. We affirm.

¶ 2 The nature of the claims presented for our review necessitate a detailed description of the factual and procedural history of the case. Appellant and Mark Campbell are the parents of a daughter, V.C., who was born out of wedlock on November 29, 1989. V.C. has been the subject of a long and contentious custody battle, which began in September of 1992 when Mr. Campbell filed for partial custo-

dy in Huntingdon County. After appellant failed to appear for a custody hearing in October of 1993, the Huntingdon County Court of Common Pleas entered an order awarding temporary legal and physical custody to Mr. Campbell. Despite the custody order and two subsequent hearings which resulted in orders to relinquish custody, appellant failed to turn the child over to Mr. Campbell until the police intervened on December 30, 1993. Subsequently, appellant and Mr. Campbell reached a voluntary stipulation, adopted by court order on February 10, 1994, allowing appellant to visit with the child at appellant's mother's residence in Huntingdon County pending another custody hearing set for June of 1994.

¶ 3 On April 24, 1994, following a scheduled visit with V.C., appellant failed to return the child to Mr. Campbell. Instead, appellant removed V.C. to Philadelphia. A hearing on Mr. Campbell's petition to find appellant in contempt of the custody agreement was scheduled for May 5, 1994. Appellant did not appear at this hearing and a bench warrant was issued for her arrest. Another custody hearing was scheduled for January 6, 1995, for which appellant was ordered to attend and produce V.C. Appellant did neither. The hearing proceeded in her absence and, on April 17, 1995, the Huntingdon County Court entered a final order awarding primary legal and physical custody of V.C. to Mr. Campbell.[2]

¶ 4 On March 2, 1995, appellant was located by State Police in Philadelphia and arrested on the Huntingdon County bench warrant of May, 1994 and V.C. was returned to her father. Appellant was then charged with interference with the custody

1. The caption as it appears in this appeal identifies appellant as "Sandra Couch." However, we note that appellant's name as it appears on most documents throughout the record is "Sandra Couch–Collins."

2. This custody order was appealed by appellant and affirmed by this court at 349HBG95

on December 29, 1995. Reargument was sought and denied. Thereafter, appellant sought allocatur to the Supreme Court of Pennsylvania at 283 M.D.Alloc.Dkt.97, which was denied by a *per curium* Order of that court dated October 2, 1997.

of a child and concealment of the whereabouts of a child. Appellant was granted bail and a preliminary hearing was set for May 30, 1995. Appellant failed to appear for the preliminary hearing on the Huntingdon County charges and another bench warrant was issued for her arrest.

¶ 5 Sometime during the night of June 4–5, 1995, appellant drove from Philadelphia to Centre County, where Mr. Campbell and the child were living, broke into Mr. Campbell's residence and took the child back to Philadelphia. The following day, she sent a facsimile to Mr. Campbell's attorney stating that she had moved from her Philadelphia residence and no attempt should be made to find the child. Sometime later, appellant returned with V.C. to her previous residence in Philadelphia and was located there and arrested by State Police in July of 1995 on the Huntingdon County bench warrant of May, 1995. Upon her return to Huntingdon County, appellant was charged with Default in Required Appearance, which was consolidated with the other Huntingdon County charges for the purposes of trial.

¶ 6 When Centre County authorities were made aware of appellant's apprehension, she was arraigned on the charges which are at issue in this appeal; interference with the custody of a child and concealment of the whereabouts of a child stemming from the break-in and removal of the child from Mr. Campbell's residence on June 4–5, 1995.[3]

¶ 7 Appellant was tried on the Huntingdon County charges before a jury on March 25, 1996, after which she was convicted only of Default in Required Appearance. At no time did appellant suggest that she wished to try the Huntingdon County case with the Centre County action.

¶ 8 In Centre County, appellant was initially represented by Wayne Bradburn,

Esq., of the Centre County Public Defenders Office. Her case was originally scheduled to be tried in October of 1995. In the fall of 1995, however, appellant changed her representation several times and filed several motions. In October of 1995, appellant sought and was granted her first continuance.

¶ 9 In February Term of 1996, jury selection was set to begin, however, neither counsel whom appellant claimed represented her at that time appeared for jury selection and the court ordered David Crowley, Esq., of the Centre County Public Defender Office to aid appellant in her selection. Trial was set to begin a few days later. However, because appellant continued to maintain that she was represented by private counsel, the Commonwealth sought a continuance of the trial until private counsel's status could be determined. Trial was continued to April Term of 1996. Both named defense counsel subsequently petitioned to withdraw and were excused from representation. At this point, appellant advised the court that she wished to continue *pro se*.[4]

¶ 10 In March of 1996, appellant filed *pro se* Motions in Limine and a Motion to Dismiss, which were denied by the trial court on April 8, 1996. On April 10, 1996, appellant appeared, advising the court that she was undergoing health problems and that she had changed her mind and wanted counsel Crowley to represent her. Once again she sought and was granted a continuance.

¶ 11 Appellant's next scheduled trial date was June 27–28, 1996. On the morning of June 27, however, appellant advised the court by facsimile that she was ill and would not be attending the trial. The court did not immediately enter a bench warrant, affording appellant the opportunity to verify her medical condition. However, after appellant failed to appear for jury

---

3. Appellant's criminal information was later amended to include charges of burglary and criminal trespass.

4. Appellant is a member of the Pennsylvania bar.

selection on August 5, 1996, a bench warrant was issued for her arrest.

¶ 12 Counsel Crowley continued to file, and the trial court continued to entertain motions filed on appellant's behalf. Appellant's whereabouts were undetermined until May 14, 1997, when she was apprehended, disguised with a wig and a cane, waiting near V.C.'s bus stop in the Centre County residential housing development where V.C. and her father were residing. Appellant was incarcerated and remained so through the time of this trial.

¶ 13 Jury selection was held on June 9, 1997, at which time the only available trial date was within three days of jury selection. The Commonwealth sought and was granted a continuance until August Term of 1997. On June 10, appellant, through attorney Crowley, filed another Omnibus Pre–Trial Motion, for the first time seeking to dismiss the Centre County charges as violative of compulsory joinder rules. The Motion was briefed, argued and denied.

¶ 14 As appellant's trial date approached, she again began pursuing *pro se* efforts. On July 29, 1997, appellant filed *pro se* pre-trial motions with the Court of Common Pleas of Centre County asking for dismissal of the charges and a new custody hearing, as well as release on bail. These motions were denied on August 13, 1997. That same day, appellant appealed those decisions to this court. Meanwhile, on August 8, 1997, appellant formally advised the trial court that she had decided to proceed *pro se*, with attorney Crowley to advise her on local rules and procedure.

¶ 15 Appellant was finally tried on August 21, 1997. In accordance with pretrial rulings, the trial court limited the matters before the jury to those events occurring from the time that V.C. was returned to Mr. Campbell in March of 1995 through the date of the Centre County break-in and removal of V.C. on June 4–5, 1995, and appellant's apprehension in July of 1995.

¶ 16 Following the trial, appellant was convicted by the jury of all charges. On November 3, 1997, appellant was sentenced as follows: on the burglary conviction, imprisonment for a term of 181 days to 12 months, with credit given for 181 days served; and on the concealment of whereabouts of a child conviction, five years probation.[5]

¶ 17 Couch appeals the judgment of sentence, raising the following questions for our review:[6]

I. DOES THE COMPULSORY JOINDER RULE OF 18 PA.C.S.A. § 110 BAR A TRIAL ON ALLEGATIONS THAT DEFENDANT CONCEALED AND INTERFERED WITH THE CUSTODY OF HER DAUGHTER WHERE DEFENDANT WAS ACQUITTED OF SIMILAR CHARGES IN AN ADJOINING COUNTY CONCERNING AN INCIDENT WHICH CONCLUDED BARELY ONE MONTH PRIOR TO THIS INCIDENT AND THE COMMONWEALTH USED ALL OF THE EVIDENCE CONCERNING THE INSTANT MATTER IN THE UNSUCCESSFUL PRIOR PROSECUTION?

II. DID THE TRIAL COURT ERR IN REFUSING TO PERMIT DEFENDANT TO INTRODUCE EVIDENCE IN INTERFERENCE WITH CUSTODY OF CHILD AND CONCEALMENT OF WHEREABOUTS OF CHILD CASE THAT SHE HAD IN FACT TAKEN THAT CHILD IN CONTRAVENTION WITH THE SAME ORDER OF CUSTODY AND

---

5. Appellant was also ordered to pay the costs of prosecution, supervision fee and costs of incarceration, to undergo any evaluation deemed necessary and as arranged by the Centre County Probation Department and to participate in any treatment and/or counseling programs recommended by such evaluation.

6. Appellant is represented by attorney Crowley in this counseled appeal.

WAS FOUND TO BE JUSTIFIED IN THAT ACTION BY A JURY OF HER PEERS.

III . DID THE SENTENCING COURT ERR IN SEPARATELY SENTENCING DEFENDANT ON BURGLARY AND CONCEALMENT OF WHEREABOUTS OF CHILD CONVICTIONS WHERE THE BURGLARY STATUTE FORBIDS SEPARATE SENTENCES ON BURGLARY AND THE UNDERLYING CRIME, THE COMMONWEALTH FAILED TO ARTICULATE AN UNDERLYING CRIME IN THE INFORMATION AND THE COMMONWEALTH AS WELL AS THE COURT TOLD THE JURY THAT CONCEALMENT WAS THE UNDERLYING CRIME TO BE COMMITTED WHEN DEFENDANT ENTERED THE BUILDING IN QUESTION?

Appellant's Brief at 6–7.

¶ 18  Appellant first contends that the compulsory joinder rule of 18 Pa.C.S.A. § 110 bars the Centre County trial because she had been previously acquitted of similar charges in Huntingdon County. We disagree.  Section 110 provides, in pertinent part, as follows:

§ 110.  **When prosecution barred by former prosecution for different offense**

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

. . . .

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense[.]

18 Pa.C.S.A. § 110(1)(ii).

¶ 19  Thus, Section 110(1)(ii) will only bar the instant prosecution if: (1) the Huntingdon prosecution resulted in an acquittal or a conviction; (2) the Centre County prosecution is based on the same criminal conduct or arises from the same criminal episode as the Huntingdon County prosecution; (3) the Huntingdon County prosecutor was aware of the Centre County charges before commencing the trial in Huntingdon County; and (4) the Centre County charges and the Huntingdon County charges were within the jurisdiction of a single court.  *Commonwealth v. Bracalielly*, 540 Pa. 460, 658 A.2d 755 (1995).

¶ 20  Here, appellant was acquitted of all of the Huntingdon County charges with the exception of the Default in Required Appearance charge, for which she was convicted.  Thus, the first requirement is satisfied.  Additionally, there is no dispute that the Huntingdon County prosecutors had knowledge of the pending Centre County charges at the time the Huntingdon County proceedings were initiated.  Accordingly, the third requirement is also satisfied in this case.

Regarding the requirement that all charges be within the jurisdiction of a single court, the Pennsylvania Supreme Court recently addressed this issue in [*Commonwealth v.*] *McPhail*, [547 Pa. 519, 692 A.2d 139 (1997) ].  . . . [While] *McPhail* is a plurality decision, and thus has limited precedential value[,] . . . the *result* of that decision is clear: it can no longer be disputed that courts of common pleas have statewide jurisdiction and may preside over trials that concern events which take place beyond the territorial limits of the county in which the

court sits. *See, McPhail, supra,* at 530, 692 A.2d 139, 692 A.2d at 144 (Opinion announcing the Judgment of the Court), *id.* at 542, 692 A.2d at 150–51 (Cappy, J., concurring), *id.* at 530, 692 A.2d at 145 (Justice Nigro Concurs in the Result). *See also Commonwealth v. Kirkland,* 700 A.2d 482, 484 (Pa.Super.1997) (following *McPhail* and concluding that courts of disparate counties each have subject matter jurisdiction over the criminal proceedings that concern crimes committed in both counties).

*Commonwealth v. Wittenburg,* 710 A.2d 69, 73 (Pa.Super.1998). Thus, we conclude that the instant charges against Couch were within the jurisdiction of a single court.

¶ 21 We now turn to the heart of the dispute; whether the charges at issue arose from the same criminal episode as the charges for which appellant was previously tried and acquitted. Appellant suggests that the two cases arose from one criminal episode in that they each involved the same "victim" (Mark Campbell), the same subject child (V.C.), one controlling custody order (entered in Huntingdon County in which primary physical and legal custody was given to Mr. Campbell) and one defense (justification).

¶ 22 As our supreme court stated in *Commonwealth v. Hude,* 500 Pa. 482, 491, 458 A.2d 177, 181 (1983), "in defining what acts constitute a single criminal episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered." In our consideration of the temporal and logical relationship between the criminal acts, we are guided by the policy considerations that § 110 was designed to serve: "Section 110, by barring criminal prosecution for offenses arising from the same criminal episode on which a previous prosecution was based, effectively creates

a rule of compulsory joinder." *Bracalielly,* 540 Pa. at 470, 658 A.2d at 760.

This compulsory joinder rule serves two distinct policy considerations: (1) to protect a criminal defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation. *Commonwealth v. Hude,* 500 Pa. 482, 489, 458 A.2d 177, 180 (1983). Stated another way, the purpose behind Section 110 is to "shield the accused from duplicitous, sequential trials. Such trials promise unnecessary delay, unnecessary expense to the accused and the Commonwealth, unnecessary duplication of judicial resources, and unnecessary aggravation to the accused and witnesses." *Commonwealth v. McPhail,* 547 Pa. 519, 530 n. 4, 692 A.2d 139, 144 n. 4 (1997). *Wittenburg,* 710 A.2d at 73.

¶ 23 With these policy considerations in mind, we review the temporal and logical relationship between the charges in the first Information and those in the second Information. In the first (Huntingdon County) Information, appellant was charged with interference with the custody of a child and concealing the whereabouts of a child.[7] These charges stemmed from a continuing course of conduct which spanned the time between April of 1994 and March of 1995. However, that criminal episode definitively ended on March 2, 1995, when appellant was located and arrested.

¶ 24 In the second (Centre County) Information, appellant was again charged with interference with the custody of a child and concealing the whereabouts of a child. Appellant was additionally charged with burglary and criminal trespass.

7. After she failed to show for the preliminary hearing on the first Information, appellant was later also charged with Default in Required Appearance, the charge of which she was later convicted.

These charges stemmed from a course of action which appellant undertook two and one-half months after appellant's arrest for the conduct which was the basis for the charges contained in the first Information. Further, there are two, independent, distinct law enforcement entities which responded to the two acts. Therefore, we find that the episodes are not temporally or logically related. *See Bracalielly*, 540 Pa. 460, 658 A.2d 755 (there was no logical relationship between drug transactions which occurred in two different counties and, therefore, acts in each county did not constitute "single criminal episode" so that prosecution in first county barred prosecution in second county, where there was the involvement of two distinct law enforcement entities, where both county law enforcement officers were conducting separate undercover investigations of defendant, and where county law enforcement officers did not participate in each other's investigations).

■ ¶ 25 Finally, we agree with the trial court that the nature of appellant's acts are different.

> In the Huntingdon County action, [appellant] had custody of [V.C.] and failed to return her at the Court ordered time. Here, [appellant] allegedly broke into the home of Mark Collins during the middle of the night and took [V.C.] to Philadelphia. While [appellant] may feel justified in both actions, there is no logical relationship between failing to return a child and actively taking a child from a residence.
>
> Since there is neither a logical nor temporal relationship between the Huntingdon County and Centre County acts, the Centre County charges are not part of the "same criminal conduct" as those in Huntingdon County and, therefore, 18 Pa.C.S.A. § 110[did] not bar the Centre County prosecution.

Trial Court Opinion and Order of August 18, 1997.

¶ 26 The second issue appellant raises for our review is whether the trial court erred in strictly limiting the evidence at trial to the time period immediately surrounding the incident at issue. Appellant's trial strategy in both cases was to assert a statutory defense of justification. Appellant argues that because she was found to be justified in keeping the child in the Huntingdon County trial, she should be allowed to testify to the facts leading up to her refusal to return the child in April of 1994 as that would make it more probable that she was justified in removing the child from Mr. Campbell's home in June of 1995. We agree with the trial court's pre-trial decision that

> Because [the trial court]...concluded the Huntingdon County criminal action is a different criminal episode from the Centre County criminal action, evidence of [appellant's] conduct prior to June 5, 1995, would be irrelevant to the Commonwealth's case-in-chief....
>
> The issue in the Centre County case [was] whether [appellant] was justified, i.e., whether [appellant] reasonably believed her actions were necessary to preserve [V.C.] from danger to her welfare, by taking the child from the home of Mark Collins [sic] on June 5, 1995. Evidence which tends to make this fact more or less probable will be admitted. [The trial court] will reiterate language from Judge Grine's Order of June 26, 1996, [which previously disposed of this same pre-trial issue,] which is applicable here:
>
>> It is still the Court's intention and Order that other than what brief background is necessary for establishing the facts of this case so that the jury is not operating in a vacuum, that the majority of the incidents prior to the charges arising in Centre County will not be relevant....

Trial Court's Opinion and Order of August 19, 1997.[8]

8. This opinion and order arose out of a pre-    trial motion of appellant seeking to bar the

¶ 27 18 Pa.C.S.A. § 2904 provides in relevant part as follows:

**§ 2904. Interference with custody of children**

(a) **Offense defined.**—A person commits an offense if [s]he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when [s]he has no privilege to do so.

(b) **Defenses.**—It is a defense that:

(1) the actor believed that [her] action was necessary to preserve the child from danger to its welfare. . . .

18 Pa.C.S.A. § 2904.

¶ 28 While our research has failed to uncover precedential caselaw which defines the statutory justification defense as set forth in 18 Pa.C.S.A. § 2904(b)(1), the Court of Common Pleas of Cumberland County concluded that the statutory defense "contemplates an . . . imminent or present danger to a child's welfare, and the facts of a particular situation must warrant interference with custody before there is an opportunity to pursue the usual avenues of redress." *Commonwealth v. Chubb*, 3 D. & C.3d 676, 679–80 (1977). We find this reasoning to be sound. Custody law provides for certain procedures to be followed in a civil action to challenge custody if a party believes that the best interests of the child are not being met by the primary custodian. Therefore, in order for the statutory justification defense to apply to a criminal offense of taking and concealing a child, there must be some instant danger present such that to follow the prescribed civil procedures would threaten the immediate welfare of the child. For this reason, we find that the trial court did not err in requiring that both parties in this criminal action limit their evidence to the time period immediately surrounding June 4, 1995, the date that the child was removed from Mr. Campbell's home.

¶ 29 Appellant's final issue is that the sentencing court erred in imposing separate sentences for her convictions for burglary and concealing the whereabouts of a child. Appellant points to 18 Pa.C.S.A. § 3502(d), which provides that "a person may not be convicted both for burglary and for the offense which it was h[er] intent to commit after the burglarious entry. . . ." Conviction for the purposes of 18 Pa.C.S.A. § 3502(d) refers not to the verdict but to the judgment of sentence. *Commonwealth v. Tessel*, 347 Pa.Super. 37, 500 A.2d 144 (1985). "In applying the doctrine of merger, we are obliged to interpret the verdict not in the light of theoretical possibilities, but rather in the light of common sense. The inquiry depends to some extent on the 'unique facts' of each case." *Commonwealth v. Whetstine*, 344 Pa.Super. 246, 496 A.2d 777, 780 (1985).

¶ 30 By statute, a person commits burglary if "[s]he enters a building or occupied structure, or separately secured or occupied portion thereof, with the intent to commit a crime *therein,* unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S.A. § 3502(a) (emphasis added). Further, our supreme court has held that the crime of burglary "encompasses the element of intent to commit a felony or any qualified crime *within* the burglarized premises." *Commonwealth v. Wilamowski*, 534 Pa. 373, 377, 633 A.2d 141, 142 (1993). Therefore, we agree with the trial court that the underlying crime intended to be committed *within* the residence at the time of the burglary was

Commonwealth from introducing evidence that she was not justified in violating the custody order relative to the Huntingdon County case because to do so would run afoul of the doctrine of collateral estoppel. In ruling on appellant's Motion in Limine, the trial court limited both parties to a timeframe subsequent to the return of V.C. to Mr. Campbell in March of 1995.

interfering with the custody of a child, not concealing the whereabouts of the child.[9]

¶ 31 Accordingly, the judgment of sentence is affirmed.

9. We also note that it was the day following appellant's removal of V.C. from Mr. Campbell's residence, after their return to Philadelphia, that appellant first manifested the intention, via a facsimile sent to Mr. Campbell's civil attorney, to move from her previous residence and conceal the location of V.C.