J-A22021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEROME MCNEMAR | |
| Appellant | No. 972 MDA 2014 |

Appeal from the Judgment of Sentence June 13, 2012
In the Court of Common Pleas of Juniata County
Criminal Division at No(s): CP-34-CR-0000139-2011

BEFORE: BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.: **FILED OCTOBER 02, 2015**

Appellant Jerome McNemar appeals from the judgment of sentence entered by the Juniata County Court of Common Pleas following his jury trial conviction for interference with custody of children ("interference with custody").[1] We affirm the conviction, but remand to the trial court for a determination as to whether Appellant must register pursuant to the Sex Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. § 9799.10, *et seq*.

Appellant is the paternal grandfather of H.S. ("Child"). N.T., 9/30/2011, at 135. Child was placed in temporary guardianship with Coleen

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2904(a).

Adlon, a friend of Child's mother. *Id.* at 29. Coleen Adlon was subsequently incarcerated, and Child was placed with Coleen's daughter, Melissa Adlon. *Id.* at 29-30.

Appellant had regular visitation with Child every other Saturday from 10:00 a.m. to 4:00 p.m. N.T., 9/30/2011, at 24. On July 2, 2011, Appellant picked Child up for his regular visit. N.T., 9/30/2011, at 26. He then took Child on an unscheduled six-day trip to visit Appellant's brother in Pittsburgh. *Id.* at 31, 71-73. He did not inform Ms. Adlon or Children and Youth Services ("CYS") of Child's location.[2]

Appellant maintains he took Child for the six-day trip because he was concerned about Child's eating habits; Child had a bad smell, had feces in his diaper and up his back, and was dirty; Appellant had concerns about Child's diet and bowel movements; Child had bruises and scratches; Ms. Adlon had informed Appellant it was almost unbearable to care for six toddlers; and Appellant felt he could better observe Child's eating and

---

[2] Following the issuance of an amended temporary custody order from Mifflin County Court of Common Pleas, Mifflin County CYS conducted a home study of Ms. Adlon's residence on May 5, 2011 and found the home to be a safe and sanitary environment. N.T., 9/30/2011, 100-01. Mifflin County CYS had no further involvement. *Id.* at 101-02. The Juniata County CYS, which is the county in which Ms. Adlon's residence is located, did not receive any phone calls regarding Child from May of 2011 through July 11, 2011. *Id.* at 122-23. Juniata County CYS received a call regarding Child on July 11, 2011, after Appellant took Child for the six days. *Id.* at 122. Caseworkers visited the home on July 15, 2011 and were satisfied that Child was safe. *Id.*

behavioral habits if he was with him for the six days. N.T., 9/30/2011, at 136-146, 159, 163. Appellant further testified that Ms. Adlon had previously permitted extended visitation, including an overnight visit. *Id.* at 141-42. Appellant did not inform CYS or the police department of his concerns regarding Child. N.T., 9/30/2011, at 165.

Child suffered no injuries during the six days and no one, including Ms. Adlon and Child's grandmother, had any fear Appellant would harm or endanger Child. N.T., 9/30/2011, at 61, 95-96.

On September 30, 2011, a jury found Appellant guilty of interference with custody. On June 13, 2012, the trial court sentenced Appellant to 2-23 months' incarceration.

In an order dated May 9, 2014 and entered May 16, 2014, the trial court ordered counsel to file correspondence that counsel had received from the Juniata County Prothonotary's Office, which the court was accepting as a notice of appeal *nunc pro tunc*. Order, 5/16/2014. The correspondence from Appellant was dated July 13, 2012. On May 19, 2014, counsel complied.

On June 20, 2014, the trial court ordered newly appointed counsel to file a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) within 25 days, or by July 15, 2014. On September 4, 2014,

Counsel filed a statement.[3]  The trial court then filed its Rule 1925(a) opinion.

Appellant raises the following claims on appeal:

A. Did the trial court provide erroneous, extraneous or confusing instructions to the jury regarding the elements and defenses to the charge of "interference with custody of a child"?

B. Did the trial court err in failing to enter a judgment of acquittal on the offense of interference with custody of a child inasmuch as the evidence was not sufficient to prove the elements of the crime?

C. Did the trial court err in failing to enter a judgment of acquittal on the offense of interference with custody [] inasmuch as the verdict was against the weight of the evidence?

D. Whether the Appellant is subject to the registration requirements of SORNA, 42 Pa.C.S. § 9799, *et seq.*?

Appellant's Brief at 5 (capitalization removed).

For ease of discussion, we will first address Appellant's second claim, that the evidence was insufficient to support his interference with custody conviction.

_____

[3]  Although this Court could find all claims waived due to the late filing of the 1925(b) statement, we will address the issues.  **See Commonwealth v. Thompson**, 39 A.3d 335, 340-41 (Pa.Super.2012) ("to avoid unnecessary delay, when a trial court orders the appellant in a criminal case to file a Rule 1925(b) statement and the appellant files it untimely, the trial court's Rule 1925(a) opinion should note the *per se* ineffectiveness of counsel, appoint new counsel if it deems it necessary, . . . and address the issues raised on appeal.").

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003), *affirmed*, 870 A.2d 818 (2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Lehman*, 820 A.2d at 772 (quoting *DiStefano*, 782 A.2d at 574). Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.*

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. *DiStefano*, 782 A.2d at 582. Further, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

A person commits the crime of interference with custody "if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." 18 Pa.C.S. § 2904(a). "Knowingly" and "recklessly" are defined as follows:

> (2) A person acts knowingly with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> >
> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.
>
> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(2)-(3).

There is a statutory defense to this crime where "the actor believed that his action was necessary to preserve the child from danger to its welfare." 18 Pa.C.S. § 2904(b)(1). In **Commonwealth v. Couch**, this Court stated:

> While our research has failed to uncover precedential caselaw which defines the statutory justification defense as set forth in 18 Pa.C.S.A. § 2904(b)(1), the Court of

- 6 -

Common Pleas of Cumberland County concluded that the statutory defense "contemplates an . . . imminent or present danger to a child's welfare, and the facts of a particular situation must warrant interference with custody before there is an opportunity to pursue the usual avenues of redress." ***Commonwealth v. Chubb***, 3 D. & C.3d 676, 679–80 (1977). We find this reasoning to be sound. Custody law provides for certain procedures to be followed in a civil action to challenge custody if a party believes that the best interests of the child are not being met by the primary custodian. Therefore, in order for the statutory justification defense to apply to a criminal offense of taking and concealing a child, there must be some instant danger present such that to follow the prescribed civil procedures would threaten the immediate welfare of the child.

731 A.2d 136, 144 (Pa.Super.1999). In ***Couch***, the Court found the trial court did not err when it required the parties to limit their evidence to the time period immediately surrounding the date the defendant removed the child from the guardian's home. ***Id.***

Appellant contends the Commonwealth failed to establish Appellant did not have a privilege, failed to establish Appellant acted recklessly, and failed to establish Appellant possessed the mens rea to interfere with custody. Appellant's Brief at 16. Appellant maintains he had implied consent, based on past conduct, which established a legal privilege to take the child. Appellant's Brief at 16. Appellant argues he had court-ordered visitation and the guardian had permitted liberal visitation. ***Id.*** at 17.

Further, Appellant argues he reasonably believed his actions were necessary to protect Child from danger. Appellant's Brief at 17. Appellant knew of Child's neglected condition, the "chaotic nature of the guardian's home," and the guardian's attitude that having Child "ruined her summer."

*Id.* Appellant therefore felt keeping Child for a week would benefit or protect Child. *Id.*

Appellant maintains that "where the actor means well, acts for the benefit of the child, and where the evidence fails to establish actual harm to the child or intent to harm the child, no crime is committed and the proper redress, if any, is contempt for a violation of a [c]ourt-ordered custody/visitation schedule." Appellant's Brief at 17-18.

The Commonwealth presented sufficient evidence in the present case to establish Appellant knowingly or recklessly took Child from the custody of Child's lawful custodian when he had no privilege to do so. Appellant does not dispute that he took Child. There was sufficient evidence for the jury to find he acted either knowingly or recklessly, as he removed Child, went to Pittsburgh for six days without informing Child's custodian any other family members, CYS workers, or police of their location, and suggested police charge him with kidnapping, a higher charge, as he wanted to bring attention to the case.

The Commonwealth also presented sufficient evidence to establish that Appellant did not have a legal privilege. Although Ms. Adlon had permitted extended visitation in the past, Appellant did not seek permission for an extended visit and did not inform anyone of Child's location.

Further, the Commonwealth presented sufficient evidence to defeat the justification defense. Although Appellant testified Child may not have been eating well and was dirty, he never informed any authorities of his

concerns. There was no evidence of imminent danger to Child's welfare, such that Appellant had no time to pursue the civil avenues available to address such concerns. Further, after removing Child from Ms. Adlon's home, Appellant did not inform police or CYS workers of Child's location or of Appellant's concerns for Child's welfare and he did not take Child to a hospital or doctor for evaluation.

Appellant next contests the interference with custody jury instructions. Appellant's Brief at 13-15. "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa.Super.2011) (quoting *Commonwealth v. Galvin*, 985 A.2d 783, 798–799 (Pa.2009) (alteration in original)). Further, when reviewing the propriety of jury instructions:

> [T]his Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1021 (Pa.Super.2014) (quoting *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa.Super.2014)).

Regarding the offense of interference with custody and the justification defense, the trial court instructed:

> [Appellant] has been charged with interfering with the custody of a child. To find [Appellant] guilty of this offense, you must find that all of the following elements have been proven beyond a reasonable doubt.
>
> First, that [Appellant] took or enticed [Child] from the lawful custody of lawful guardian; Second, that [Child] was a child under the age of 18. Third, that [Appellant] did not have a legal privilege to take [Child]; and fourth, that [Appellant] either knew he was doing these things or acted recklessly in doing them.
>
> A defendant acts recklessly if he or she consciously disregards a substantial and unjustifiable risk that he is taking a child from someone else's custody, that the child is under 18, and that he, the defendant, has no legal privilege to take the child. It must be grossly unreasonable for the defendant to disregard the risk that what he is doing amounts to these things.
>
> Circumstances may exist in a case that provide the defendant a complete defense to this charge. The Commonwealth must prove beyond a reasonable doubt that such circumstances did not exist. The circumstance is that [Appellant] believed that his action was necessary to preserve the child from danger to his welfare.
>
> The Commonwealth has the burden of proving beyond a reasonable doubt that this circumstance did not exist at the time [Appellant] took [Child]. If it fails to do so, you must find [Appellant] not guilty. If the Commonwealth carries this burden, and otherwise proves the elements of the offense as I previously explained to you, then you should find [Appellant] guilty.
>
> If you find that [Appellant] reasonably believed that [Child's] welfare was in imminent danger, you must find [Appellant] not guilty. The consideration of long-term psychological damage or the like does not entitle [Appellant] to this defense.

N.T., 9/30/2011 at 189-91.

Appellant maintains the last paragraph, wherein the trial court instructed that the danger needed to be imminent and that long-term psychologic damage did not entitle Appellant to the justification defense, was reversible error. Appellant's Brief at 14-15.

Although this paragraph is not in the standard jury instruction, it is contained in the standard instruction's advisory notes. **See** Advisory Committee Note Pa.S.J. 15.2904 (noting **Chubb**, 3 Pa.D.&C.3d at 680, held "it must be shown that the child's welfare was in danger or at least that the actor reasonably believed that it was" and "the belief of the actor must relate to imminent danger," and noting "consideration of long-term psychological damage or the like does not entitle the defendant to this defense"). Further, the instruction is supported by appellate precedent and there is no indication it confused or misled the jury. **Couch**, 731 A.2d at 144 (finding "in order for the statutory justification defense to apply to a criminal offense of taking and concealing a child, there must be some instant danger present such that to follow the prescribed civil procedures would threaten the immediate welfare of the child") Therefore, the trial court properly instructed the jury as to interference with custody.

Appellant next contends the verdict was against the weight of the evidence.

"One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the

weight of the evidence." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa.2013) (quoting ***Commonwealth v. Widmer***, 744 A.2d 745 (Pa.2000)). A weight of the evidence claim concedes that the Commonwealth introduced sufficient evidence. ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa.Super.2006), *appeal denied*, 911 A.2d 933 (Pa.2006) (citing ***Commonwealth v. Galindes***, 786 A.2d 1004, 1013 (Pa.Super.2001)). A trial judge should not grant a new trial due to "a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Clay***, 64 A.3d at 1055. Instead, the trial court must examine whether "'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id.*** (quoting ***Widmer***, 744 A.2d at 752). Only where the jury verdict "is so contrary to the evidence as to shock one's sense of justice" should a trial court afford a defendant a new trial. ***Id.*** (quoting ***Commonwealth v. Brown***, 648 A.2d 1177, 1189 (1994)).

We review challenges to the weight of the evidence as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> ***Commonwealth v. Small***, 741 A.2d 666, 672–73 (Pa.1999) [*cert. denied*, 121 S.Ct. 80, 148 L.Ed.2d 42 (U.S.2000)]. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is

> against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa.Super.2011), *appeal denied*, 42 A.3d 1059 (Pa.2012) (some internal citations omitted).

The trial court did not err in finding the verdict was not against the weight of the evidence. The verdict does not shock the conscience and the jury was entitled to believe the Commonwealth's evidence.

Appellant next contends that we should remand for an order striking his sexual offender registration requirement. Appellant received notice of this requirement after his judgment of conviction. Appellant's Brief at 21-22. The Commonwealth concedes Appellant should not be required to register.[4] Appellee's Brief at 12.

Because registration pursuant to SORNA was not contained in Appellant's judgment of sentence, and no trial court order has addressed this issue, we cannot review Appellant's SORNA registration requirement.

---

[4] On March 12, 2014, the General Assembly, passed House Bill 1985, which became law on March 14, 2014. *See* 2014 P.L. 19, § 3, 7(1) (enacted Mar. 14, 2014, effective Dec. 20, 2012) ("Act 19"). Act 19 amended SORNA's applicability provisions and inserted 42 Pa.C.S. § 9799.13(3.1). As amended, the statute removes convictions for certain crimes, including interference with custody, from the definition of "sexually violent offense," and, therefore, removes those crimes from SORNA's registration requirement. *See* 42 Pa.C.S. § 9799.13(2), (3.1) (enacted Mar. 14, 2014, effective Dec. 20, 2012).

We will remand to the trial court to conduct proceedings addressing Appellant's registration pursuant to SORNA.

Judgment of sentence affirmed. Case remanded to the trial court for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2015