**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 23 EAP 2020 |
| | : | |
| Appellee | : | Appeal from the Judgment of Superior |
| | : | Court entered on 10/16/19 at No. 1233 |
| | : | EDA 2017 (reargument denied |
| v. | : | 12/26/19) affirming in part and reversing |
| | : | in part the order entered on 4/3/17 in |
| | : | the Court of Common Pleas, |
| | : | Philadelphia County, Criminal Division |
| DEWITT JOHNSON, | : | at No. CP-51-CR-0008678-2015 |
| | : | |
| Appellant | : | ARGUED:  December 2, 2020 |

*OPINION*

**CHIEF JUSTICE SAYLOR**                **DECIDED:  March 25, 2021**

This appeal concerns the application of the statutory compulsory joinder rules, which generally require a prosecutor to pursue, in a single proceeding, all known charges against a defendant arising from a single criminal episode occurring within the same judicial district, subject to enumerated exceptions.  The exception in issue pertains when a court lacks jurisdiction over a defendant or the offense.

In June of 2015, as a result of a traffic stop, Appellant was arrested and charged with driving with a suspended license, possession with intent to deliver heroin ("PWID"), and knowing and intentional possession of heroin ("K&I").  Before the Traffic Division of the Municipal Court of Philadelphia, he was found guilty, *in absentia*, of the summary traffic offense.  *See* 42 Pa.C.S. §1121(c)(3) (delineating the Traffic Division's jurisdiction for the relevant time period).

The Municipal Court's jurisdiction is capped at criminal offenses punishable by imprisonment for a term of not more than five years. *See id.* §1123(a)(2). Accordingly, and since that court lacked jurisdiction over PWID, *see* 35 P.S. §780-113(f)(1) (prescribing a maximum penalty of fifteen years' imprisonment for this crime), the Commonwealth pursued the drug offenses in the common pleas court, which, under the Pennsylvania Constitution, has "unlimited original jurisdiction in all cases except as may otherwise be provided by law." PA. CONST., art. V, §5(b). Appellant filed a motion to dismiss, contending that the prosecution was required to try all of the offenses simultaneously, per the compulsory joinder requirements of Section 110 of the Crimes Code, 18 Pa.C.S. §110. As noted, Section 110 generally requires the government to bring all known charges against a defendant arising out of a single criminal episode occurring within the same judicial district in a single proceeding. *See id.* §110(1). The county court, however, denied the motion.

On interlocutory appeal, the Commonwealth acknowledged the recent decision in *Commonwealth v. Perfetto*, 652 Pa. 101, 207 A.3d 812 (2019), holding that Section 110 generally prohibits the government from proceeding with a prosecution subject to the jurisdiction of the Philadelphia Municipal Court, after a summary offense arising from the same criminal episode had been adjudicated in the Traffic Division of that court. *See id.* at ___, 207 A.3d at 813. Based on *Perfetto*, the Commonwealth conceded that it was foreclosed from pursuing the K&I charge, because that crime, like the traffic offense, fell within the Municipal Court's jurisdiction. Nevertheless, the Commonwealth argued that PWID remained viable, since the Municipal Court had lacked jurisdiction over that offense. In this regard, the Commonwealth invoked Section 112(1) of the Crimes Code, which serves as an exception to Section 110's general prohibition by providing, in relevant part:

A prosecution is not a bar within the meaning of [*inter alia,* Section 110] under any of the following circumstances:

(1) The former prosecution was before a court which lacked jurisdiction over the defendant or the offense.

18 Pa.C.S. §112(1). It was the Commonwealth's position that "the offense," in Section 112(1), doesn't mean the offense that was the subject of the prior prosecution, but rather, concerns the crime or crimes for which the government is seeking subsequent convictions.

The Superior Court credited this argument and affirmed with respect to PWID. *See Commonwealth v. Johnson*, 221 A.3d 217, 220-21 (Pa. Super. 2019).

Appellant lodged an application for reargument, contending that "the offense," in Section 112(1), means the crime that was the subject of the previous prosecution. Thus, according to Appellant, the exception applies only to situations where the prior conviction or acquittal was rendered by a court without jurisdiction or authority to render a judgment in the first instance. He stressed that this was not the circumstance in his case, because the Traffic Division unquestionably had jurisdiction to convict him of the summary traffic offense. The Superior Court denied Appellant's application.

As concerns the serial prosecutions of single-criminal-episode summary offenses (triable at the magisterial district court level) and greater crimes (over which magisterial district courts lack jurisdiction), the history of Section 110 provides some illumination. In 1973, this Court mandated compulsory joinder under its supervisory powers. *See Commonwealth v. Campana*, 455 Pa. 622, 626, 314 A.2d 854, 856 (1974) (*per curiam*).[1] By that time, the General Assembly had already enacted Section 110 of the

---

[1] Previously, a plurality of Justices grounded the decision to judicially require compulsory joinder upon federal constitutional law under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment. *See Commonwealth v. Campana*, 452 Pa. 233, 304 (continued…)

Crimes Code, legislation which the Court deemed to be "entirely in harmony" with its supervisory mandate. *Id.* at 626, 314 A.2d at 856.[2] Significantly, as well, both this Court in *Campana*, and the General Assembly, in its statutory scheme of compulsory joinder, derived governing principles from the Model Penal Code. *See* 42 Pa.C.S. §110, Editor's Notes (citing the 1967 Joint State Government Commission Comment to the effect that, "[t]his section is derived from Section 1.09 of the Model Penal Code"); *Campana*, 452 Pa. at 248-250 & nn.31, 32 & 37, 304 A.2d at 438-40 & nn.31, 32 & 37.[3]

(…continued)
A.2d 432, *vacated and remanded*, *Pa. v. Campana*, 414 U.S. 808, 94 S. Ct. 73 (1973). However, upon certiorari sought and granted, that opinion was vacated by the Supreme Court of the United States, which remanded for clarification. *See Campana*, 414 U.S. 808, 94 S. Ct. 73. Upon remand, this Court recharacterized its previous, divided decision as having been predicated on an exercise of its supervisory powers under Article V, Section 10(c) of the Pennsylvania Constitution. *See Campana*, 455 Pa. at 627, 314 A.2d at 56.

[2] Parenthetically, in *Campana*, the Court didn't discuss the apparent tension amongst its exercise of supervisory powers, the Legislature's enactment of a parallel statute, and the notion, maintained by a majority of this Court, that the Court's supervisory powers under Article V, Section 10(c) are exclusive. *See*, *e.g.*, *Renner v. Court of Common Pleas of Lehigh County*, ___ Pa. ___, ___, 234 A.3d 411, 425 (2020) ("[T]he Constitution grants exclusive policy and rule-making power to the judiciary regarding the courts."). *But see id.* at ___, 234 A.3d at 426-47 (Saylor, C.J., concurring) (criticizing the exclusivity notion as unsustainable, in light of the many instances in which the Court has accepted legislative actions overlapping with matters over which the Court exercises supervisory powers). It is beyond the scope of this opinion to further address this exclusivity jurisprudence.

[3] Although Section 110 was patterned after Section 1.09 of the Model Penal Code, a material limitation -- *i.e.,* that the offenses in issue must be "within the jurisdiction of a single court," derives from Section 1.07 of the Model Penal Code, which, in relevant part, is incorporated by reference into Section 1.09. *See* Model Penal Code & Commentaries, art. I, §1.09(1)(b), at 155 (Am. Law Inst. 1985) [hereinafter, "MPC & Commentaries"].

In the *Campana* line of decisions, a plurality of Justices made it clear that their intent was generally to require summary and greater offenses arising out of single criminal episodes to be consolidated in the common pleas courts.  *See Campana*, 452 Pa. at 253-54, 304 A.2d at 441-42.[4]  This approach would seem to be consonant with the plain language of the Model Penal Code and Section 110, which barred subsequent prosecutions that were "within the jurisdiction of a single court" -- facially signifying any single court where jurisdiction might lie, including the courts of common pleas -- and not only the particular court in which an initial prosecution may have been conducted.

Nevertheless, in a series of subsequent decisions, and in a departure from the policy judgment of the *Campana* plurality, this Court construed the "within the jurisdiction of a single court" proviso to permit serial prosecutions for summary and greater offenses, respectively, at the magisterial district and common pleas tiers.  *See Commonwealth v. Taylor*, 513 Pa. 547, 552-53, 522 A.2d 37, 39-40 (1987); *Commonwealth v. Breitegan*, 500 Pa. 384, 385-86, 456 A.2d 1340, 1341 (1983); *Commonwealth v. Beatty*, 500 Pa. 284, 290-91, 455 A.2d 1194, 1198 (1983).  In explaining this decision, the Court did not focus on substance of the "within the jurisdiction of a single court" language or its history or derivation, but rather, relied on the following policy pronouncement:

> We are aware that 42 Pa.C.S.A. §931(b) appears to recognize concurrent jurisdiction in such cases of the Court of Common Pleas.  Nevertheless, we will not construe the phrase "and was within the jurisdiction of a single court" in such a manner as to ignore the traditional division of labor in

---

[4] This policy was arguably adopted by a majority of Justices when the Court recharacterized the prior decision as embodying an exercise of the Court's supervisory powers.  *See Campana*, 455 Pa. at 626, 314 A.2d at 856 ("This Court views our May 4, 1973 judgments in *Campana* as state law determinations pursuant to our supervisory powers.").

our court system. The traditional role of the Court of Common Pleas in the disposition of summary motor vehicle offenses is the role of the reviewing tribunal as opposed to the court of original jurisdiction. 42 Pa.C.S.A. §932.

\* \* \*

Our interpretation of Section 110(1)(ii) as excluding traffic violations under the Motor Vehicle Code is further bolstered by a consideration of the purposes sought to be achieved by the legislative enactment as well as our promulgation of the compulsory joinder rule. The disposition of a summary offense in a traffic matter prior to the trial of a misdemeanor or felony does not present the type of governmental harassment of a defendant that would offend double jeopardy concerns. Additionally, judicial economy is not served by requiring our Courts of Common Pleas to dispose of these matters which are regularly entrusted to the district justices for disposition.

*Id.* at 290-91 & n.3, 455 A.2d at 1198 & n.3.[5]

Under this line of authority, the present prosecution for PWID would be permissible. However, in 2002, the Legislature modified Section 110(1)(ii) to remove the "within the jurisdiction of a single court" proviso upon which these decisions were premised. *See* Act of June 28, 2002, P.L. 481, No. 81, §1. It seems that the displacement of the *Beatty* line of decisions may have been an unintended consequence, since the General Assembly's clear intention was to override the effect of *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1997) (plurality), which had led to the "within the jurisdiction of a single court" proviso of Section 110(1)(ii) being met even where multi-jurisdictional criminal episodes were involved. *See id.* at 530, 692 A.2d at 144-45. Disapproving this state of affairs, the General Assembly amended

---

[5] As reflected above, in *Beatty*, the Court had initially confined its reasoning to scenarios involving summary offenses arising under the Motor Vehicle Code. In *Taylor*, however, the Court extended the holding to summary offenses in general, *see Taylor*, 513 Pa. at 553, 522 A.2d at 40, so long as the scenario doesn't involve multiple summary offenses. *See Commonwealth v. Geyer*, 546 Pa. 586, 592, 687 A.2d 815, 817-18 (1996).

Section 110(1)(ii) to reflect its current language by replacing the phrase "was within the jurisdiction of a single court" with "occurred within the same judicial district as the former prosecution." *See* Act of June 28, 2002, P.L. 481, No. 81, §1.

Again, the intended effect of the 2002 amendment was to limit mandatory joinder only to those offenses occurring in a single judicial district. *See Commonwealth v. Fithian*, 599 Pa. 180, 199, 961 A.2d 66, 77 (2008). But another impact -- which may not have been intended -- was to displace the *Beatty* line of decisions, which had approved of the serial litigation of summary offenses at the magisterial district court level and greater offenses in the county courts. *See Perfetto*, 652 Pa. at ___, 207 A.3d at 824.

So far, our discussion has centered on Section 110; whereas, the present case concerns the *exception* set forth in Section 112 of the Crimes Code, pertaining to instances in which, "[t]he former prosecution was before a court which lacked jurisdiction over the defendant or the offense." 18 Pa.C.S. §112(1). Both parties agree that the term "the offense," as employed in Section 112(1), is ambiguous. Accordingly, they maintain their competing positions regarding whether "the offense" relates to the crime that was the subject of the previous prosecution or the ones that are the subject of subsequent prosecution.

Significantly, the Commonwealth invites us to return to the roots of compulsory joinder policy by revisiting the Model Penal Code. In this regard, the Commonwealth explains that Section 112 is derived from Section 1.11 of the Model Penal Code. *See* Brief for Appellee at 18 (citing 18 Pa.C.S. §112, Comment). Further, it highlights that the commentaries associated with the Model Penal Code recognize that, "'[a] number of jurisdictions have held' that 'a conviction for a lesser included offense in a court that lacked jurisdiction over the greater offense is not a bar to successive prosecutions.'" *Id.* at 18 (quoting MPC & Commentaries, art. I, §1.11, cmt. 2 n.6, at 179-180).

The relevant passage, however, proceeds to explain that, "[l]ower courts have held in several recent decisions that consecutive prosecutions of greater and lesser included offenses would violate double jeopardy, even where the first court lacked jurisdiction over the greater offense." MPC & Commentaries, art. I, §1.11, cmt. 2, at 179-181 (citations omitted). Notably, the latter commentary is more in keeping with textual discussion at large.

And more importantly, Section 1.11(1) of the Model Penal Code is explicitly premised on the concept of a "jurisdictional error," which occurs "when a court, although it assumes power to dispose of a case, has no power to do so." *Id.* at 181. According to the commentaries, a judgment by a court committing such an error will not bar a subsequent prosecution, since "[a]ll courts agree that a former trial is not a bar unless the court had jurisdiction, the rationale being that since the judgment of or any action taken by a court without jurisdiction is a nullity, the defendant has not been placed in jeopardy if the court did not have jurisdiction." *Id.* at 179-180 (footnotes omitted)); *see also id.* at n.6 (citing *Grafton v. United States*, 206 U.S. 333, 345, 27 S. Ct. 749, 751 (1907) ("We assume as indisputable, on principle and authority, that before a person can be said to have been put in jeopardy of life or limb the court *in which he was acquitted or convicted* must have had jurisdiction to try him for the offense charged." (emphasis added))). In this fashion, the commentaries decisively undercut the Commonwealth's position.[6]

---

[6] Although the commentaries referenced above were published in 1985, thirteen years after Section 110's enactment, the grounding of Section 1.11(1) of the Model Penal Code on the concept of jurisdictional error in an initial prosecution was evident in integrated commentary since the early drafting. *See, e.g.*, Model Penal Code Tentative Draft No. 5, art. I, §1.12, cmt. 1, at 64 (Am. Law Inst. 1956).

There is another difficulty with the Commonwealth's arguments, which is reflected in the historical development of compulsory joinder, as discussed above. The way in which this Court's decisions had evolved -- rightly or wrongly as relating to the original intentions of the Model Penal Code drafters -- the *Beatty* line of cases had construed Section 110 as inapplicable to the scenario in which the court presiding over the initial prosecution lacked jurisdiction over other offenses. *See Beatty*, 500 Pa. at 290-91 & n.3, 455 A.2d at 1198 & n.3. Thus, if the Commonwealth's construction of Section 112(1) were to be adopted, the statutory provision would have been superfluous at the time it was enacted (notwithstanding that the Commonwealth's construction would have garnered import after the Legislature amended Section 110(1)(ii) in 2002 to remove the "within the jurisdiction of a single court" proviso). This understanding also militates weightily against the Commonwealth's position. *See* 1 Pa.C.S. §1922(2) (prescribing for the presumption that the Legislature intends for the entirety of statutes to be effective and certain).

We recognize that several Justices, including this author, have previously favored a construction of Section 112(1) grounded on the *Beatty* Court's policy assessment that the Legislature would have apprehended and supported the traditional division of labor in the judicial system. *See Perfetto*, 652 Pa. at ___, 207 A.3d at 825-26 (Saylor, C.J., dissenting). On reflection, however, and upon review of the Model Penal Code provision and associated commentaries underlying Section 112(1), we decline to impose a policy-based construction upon the statute that disregards the explanation of its meaning, taken from the source from which it was derived, that was available to the Legislature at the time of the statute's enactment. *See supra* note 6.[7] While this

---

[7] As Appellant highlights, moreover, this Court has previously applied an analysis of Section 112(1) centered on the jurisdiction of the court presiding over the initial prosecution (or, there, a juvenile adjudication), in *Commonwealth v. Johnson*, 542 Pa. (continued…)

approach would seem to be the opposite of that which was applied in the *Beatty* line of decisions, in our considered judgment, some of the complexity and disharmony that has arisen in the compulsory joinder arena stems from the elevation of policy judgments over clearer indications of legislative design and intention. Of course, the General Assembly remains free to amend the joinder requirements to align with its current intentions, subject to constitutional limitations.[8]

---

(…continued)
568, 574, 669 A.2d 315, 318 (1995). *Accord Commonwealth v. Schmotzer*, 831 A.2d 689, 696 (Pa. Super. 2003).

[8] Certainly, as here, themes from the Model Penal Code retain their vitality in the Crimes Code. But, as in other states, legislative adjustments and common law accretions have substantially altered the implementation, in Pennsylvania, of some of the Code's original philosophies. *See generally* Anders Walker, *The New Common Law: Courts, Culture, and the Localization of the Model Penal Code*, 62 HASTINGS L.J. 1633, 1634 (2011).

Notably, in the compulsory joinder arena, one emerging theme, advocated by the American Bar Association, has favored shifting the onus from the government to the defendant to advance joinder. *See* AM. BAR ASS'N, CRIMINAL JUSTICE SECTION STANDARDS, JOINDER AND SEVERANCE, pt. I, Standard 13-2.3(d), *https://www.americanbar.org/groups/criminal_justice/publications/ criminal_justice_section_archive/crimjust_standards_joinsev_blk/* (last visited Dec. 23, 2020) ("Entry of a plea of guilty or nolo contender to one offense does not bar the subsequent prosecution of any additional offense based on the same conduct or the same criminal episode."); *see also id.*, Standard 13-2.3(b) ("A defendant's failure to move for joinder constitutes a waiver of any right of joinder as to 'same conduct' or 'single criminal episode' offenses which the defendant knew had been charged.").

Absent adjustment by the General Assembly, however, consistent with the original Model Penal Code treatment embedded into the compulsory joinder provisions of the Crimes Code, this burden presently remains on the Commonwealth. *See, e.g.*, *Commonwealth v. Failor*, 564 Pa. 642, 649, 770 A.2d 310, 314 (2001) ("[T]he burden to protect a defendant from vexatious litigation and to conserve judicial resources rests squarely on the shoulders of the Commonwealth[.]"). In this vein, although an exception to compulsory joinder applies when the defendant takes affirmative action to separate the prosecutions pending against him, resulting in a waiver, such action must rise above (continued…)

We hold that "the offense," in Section 112(1), means the offense that was the subject of an initial prosecution resulting in a conviction or acquittal. The ultimate purport, with respect to the summary-and-greater-offenses paradigm, is that the Commonwealth must generally assure that known offenses are consolidated at the common pleas level, when they arise out of a single criminal episode and occur in the same judicial district. *See Failor*, 564 Pa. at 649, 770 A.2d at 314.[9] Perhaps ironically, this is consistent with the *Campana* plurality's policy perspective, also derived from the Model Penal Code, where this all began. *See Campana*, 452 Pa. at 253-54, 304 A.2d 441-42.

The order of the Superior Court is reversed, and the matter is remanded for dismissal of the PWID charge.

Justices Todd, Donohue and Wecht join the opinion.

Justice Baer files a dissenting opinion in which Justices Dougherty and Mundy join.

---

(…continued)
and beyond the mere act of pleading guilty to summary offenses. *See id.* at 648-51, 770 A.2d at 314-15.

[9] The same rationale applies to the Philadelphia Municipal Court as pertains in the magisterial district courts at large, albeit that, with respect to the former, the *Perfetto* scenario also must be considered. This suggests consolidation, in the General Division of the Municipal Court, of summary traffic offenses with other crimes over which the Municipal Court has jurisdiction. *See Perfetto*, 652 Pa. at ___, 207 A.3d at 823.